FILED

OCT 1 8 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

IN RE: OUTSIDEWALL TIRE          )
LITIGATION                       )          Case No. 1:09cv1217
                                 )

## MEMORANDUM OPINION

At issue in these closely-related consolidated[1] international business tort cases is

defendants' Rule 59 motion for a new trial following a jury verdict in favor of plaintiffs on

claims for copyright infringement, unfair competition and deceptive trade practices,[2] conversion,

and civil conspiracy. For the reasons that follow, this motion must be denied.

### I.

Plaintiffs in these consolidated cases are (i) Jordan Fishman, a Florida citizen, and three

companies he owns and controls: (ii) Tire Engineering & Distribution LLC ("TED"), a Florida

company, (iii) Bearcat Tire ARL, LLC ("Bearcat"), also a Florida company, and (iv) Bcatco

A.R.L., Inc. ("Bcatco"), which is incorporated under the laws of the Jersey Channel Islands.

During times relevant to this litigation, plaintiffs were in the business of designing,

manufacturing, and marketing rubber tires for use on underground mining vehicles.

There are two sets of defendants. The first set, collectively referred to as "Al Dobowi

defendants," consists of (i) Al Dobowi, Ltd., (ii) Al Dobowi Tyre Co., LLC, (iii) TyreX

International, Ltd., and (iv) TyreX International Rubber Co., Ltd., all of which are corporations

---

[1] *See In re Outsidewall Tire Litigation*, No. 1:09cv1217 (E.D. Va. April 16, 2010) (Order) (consolidating the cases for trial).

[2] Plaintiffs trademark claims alleged (i) unfair competition based on misappropriation of plaintiffs' unregistered trademarks and (ii) infringement of plaintiffs' registered trademark, "Mine Mauler." Although the jury reached a verdict in favor of plaintiffs on both the registered and unregistered marks, the claims were dismissed as to plaintiffs' registered marks on defendants' Rule 50(b) motion. *See In re Outsidewall Tire Litigation*, No. 1:09cv1217 (E.D. Va. July 21, 2010) (Order).

based in the United Arab Emirates and owned by Surender Kandhari, a citizen of Dubai. The second set of defendants, collectively known as "Linglong defendants," includes (v) Shandong Linglong Rubber Co., Ltd. and (vi) Shandong Linglong Tire Co., Ltd., both of which are incorporated and based in China. All defendants are, *inter alia*, in the business of designing, manufacturing, and/or marketing rubber tires.

The central allegation in this matter was that defendants designed, manufactured, and sold specialized mining tires copied from mining tires originally designed and sold by plaintiffs and protected by plaintiffs' intellectual property rights. In the course of the six-day trial, plaintiffs presented live and videotaped testimony from several witnesses, including (i) Sam Vance, plaintiffs' former employee and an alleged employee of Al Dobowi defendants; (ii) Surender, Harjeev, and Jasjeev Kandhari, who together operate the Al Dobowi defendant entities; (iii) John Canning, a tire design consultant to Al Dobowi defendants with personal knowledge of the alleged conspiracy; and (iv) Merry Wang, an executive with Linglong defendants. Plaintiffs also presented documentary evidence, including e-mail exchanges among the alleged co-conspirators admitted pursuant to Rule 801(d)(2)(E), Fed. R. Evid. Defendants, in response, presented live testimony from Jasjeev Kandhari, a director of the Al Dobowi entities, and Merry Wang, a marketing director with Shandong Linglong Tire Co. The parties also presented competing expert witnesses on the issues of infringement and damages.

The credible evidence adduced at trial was sufficient to allow a reasonable juror to conclude by the requisite standard of proof as follows:

- In the first week of May 2005, Surender Kandhari and John Canning, both representing one or more Al Dobowi defendants, met with Sam Vance in the lobby of the Jefferson Hotel in Richmond, Virginia.[3] During this hour-long meeting, Vance, Canning, and Surender Kandhari discussed the possibility of Al Dobowi defendants—which had never

---

[3] Tr. July 8, 2010, at 532 (testimony of John Canning).

before manufactured or sold mining tires—producing a line of mining tires based on plaintiffs' line of mining tires, known as "Alpha tires."[4]

- Vance apparently retained blueprints belonging to plaintiffs without plaintiffs' permission even though a warning on the drawings indicated that they were confidential, and that reproduction or other use must be expressly authorized in writing.[5]

- By September 2005, Vance was working with Linglong defendants to adapt the Alpha tire blueprints into drawings for Al Dobowi defendants' new "Infinity Mining tires" series. Vance indicated in a contemporaneous e-mail to Merry Wang that he was working "on the 2 drawings."[6] In this e-mail message dated September 1, 2005, Vance sought to confirm that Linglong defendants' engineering department was "working on the reccommendations [sic] for the changes to the drawings" to ensure that "our Infinity Mining tires would not look like the AA (Awful Alpha) Ha!"[7]

- In a September 8, 2005 e-mail from Canning to Vance, to which the three Kandharis were copied, Canning asked Vance a series of questions about Vance's proposed drawings, noting: "I understand we can't copy exactly what Jordan [Fishman] has done but as I said the tyre has to look the part."[8]

- Vance, Canning, and Linglong defendants proceeded to design new tire blueprints and molds based on the Alpha tire blueprints, despite having ample notice—including several communications from plaintiff Jordan Fishman—that the blueprints contained protected intellectual property. Indeed, in a September 22, 2006 e-mail from Vance to Sean DeCosta, an Al Dobowi sales manager, Vance notes: "Please remember we copied existing products in the field."[9]

- Additionally, the Infinity Tire's sidewall also contains the marking "L-6T", a marking that also appears on Alpha tires. As Vance acknowledged in an e-mail message to a Linglong employee, the L-6T mark suggests a tire with significant tread depth, but the mark itself has no technical meaning; to the contrary, "this was only a marketing thing."[10]

---

[4] *Id.* at 533–36.

[5] Pls. Ex. 153.

[6] Pls. Ex. 103 (e-mail from Vance to Merry Wang). The e-mail says 'Na.' and not 'Va.', but Vance acknowledged in his videotaped testimony that this was a typographical error and that he was, in fact, referring to his home in Virginia. *See* Tr. July 8, 2010, at 697 (testimony of Vance).

[7] Pls. Ex. 103.

[8] Pls. Ex. 25.

[9] Pls. Ex. 26.

[10] Pls. Ex. 36.

The Tyre & Rim Association standards for tread depth measurement range from L-1 to L-5; an Alpha tire branded as L-6T had an L-5 tread depth rating. In the September 2006 e-mail to DeCosta, Vance notes: "The brand copied used a marketing stratigy [sic] of L-6 to give the impression of having the most tread depth. So as not to give the imression [sic] of having less we copied the L-6 T strategy."[11] This message strongly indicates that defendants chose to use the L-6T mark on the basis of the meaning that plaintiffs' use of the L-6T mark had acquired in the industry.

- Both the Alpha tires and the Infinity tires carried the mark "Δ Recap." There was disputed evidence as to whether the "Δ" mark is arbitrary, or whether it is in fact commonly used on tires to indicate the point at which a tire needs to be retreaded.[12]

- On more than one occasion, Vance and/or family members of Al Dobowi stated that they were not concerned about liability for infringing Fishman's designs because they "didn't believe Jordan Fishman would ever get his case to court [because] he would die or run out of money first."[13]

The jury found for plaintiffs on all counts on July 15, 2010, and awarded $26 million in damages. On July 20, defendants renewed their previously-deferred motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R. Civ. P.[14] This motion was granted in part and denied in part. *See In re Outsidewall Tire Litigation*, No. 1:09cv1217 (E.D. Va. July 21, 2010) (Order) ("July 21 Order"). As indicated in the July 21 Order, the evidence presented at trial was sufficient to show infringement of at least two of the eleven unregistered marks, namely the marks "L-6T" and "Δ Recap." Accordingly, the jury's verdict on the unfair competition claim under § 43 of the Lanham Act, 15 U.S.C. § 1125(a), was sustained in this regard. The verdict was also sustained with respect to the copyright, common law conspiracy, and conversion claims. Yet, defendants were granted judgment as a matter of law with respect to the registered

---

[11] Pls. Ex. 26.

[12] Tr. July 7, 2010, at 233–34 (testimony of Jordan Fishman); Tr. July 13, 2010, at 1177 (testimony of Mark Mineur).

[13] Tr. July 8, 2010, at 627 (testimony of Canning).

[14] Prior to the verdict, defendants' filed a motion for judgment as a matter of law pursuant to Rule 50(a), Fed. R. Civ. P, which was taken under advisement.

trademark claims because the evidence was insufficient to show a likelihood of confusion on plaintiffs' registered "Mine Mauler" mark. Defendant Surender Kandhari was also dismissed from the case as an individual defendant because he was not served in an individual capacity. *See* July 21 Order.

## II.

The standards for evaluating a motion for a new trial pursuant to Rule 59, Fed. R. Civ. P., are too well-settled to require elaboration here. Under Rule 59(a), a new trial may be granted in an action in which there has been a trial by jury "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59(a), Fed. R. Civ. P. In this regard, Fourth Circuit precedent instructs that a new trial is warranted for "(1) intervening changes in the law; (2) new evidence not available at trial; and (3) to correct a clear error of law or prevent a miscarriage of justice." *Douglas v. McCarty*, 87 Fed. Appx. 299, 302 (4th Cir. 2003) (citing *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997)). Thus, a new trial is also appropriate where the verdict is "against the clear weight of the evidence." *Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). And in this regard, the district court in evaluating the evidence may consider the credibility of the witnesses. *See Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir.1980).

## III.

In support of their motion for a new trial, defendants offer the following arguments:

1. The general damages award is fatally infirm because it is impossible to tell from the verdict form whether the jury awarded damages based on any improper legal theories, such as (a) registered trademark infringement, a claim that was dismissed on defendants' Rule 50(b) motion; (b) conspiracy to infringe plaintiffs' registered trademarks, since the underlying claim for registered trademark infringement was dismissed; (c) the conspiracy and conversion claims in their entirety, because they are both preempted; or (d) the copyright infringement claim

to the extent the jury awarded damages on the erroneous jury instruction of contributory copyright infringement.

2. The damages award was excessive and against the clear weight of the evidence because (a) plaintiffs' damages expert based his calculations on speculative forecasts; (b) plaintiffs failed to present evidence of the fair market value of the blueprints to explain damages for their conversion claim; (c) damages for copyright infringement must have been erroneously based on extra-territorial acts because no evidence of infringement was adduced for acts in the United States; and (d) plaintiffs improperly applied Virginia law, rather than Chinese law, to damages calculations.

3. Certain evidentiary errors merit a new trial, namely (a) the failure to admit the plaintiffs' patent file to impeach Fishman; (b) the failure to exclude defendants' business plan; and (c) the failure to admit the complaint and settlement agreement from the case filed by plaintiffs against their manufacturer, GTC.

4. The finding of liability for conspiracy was against the clear weight of the evidence, and as such, jurisdiction over all defendants was improper; and

5. Consolidation allowed plaintiffs to gain greater rights than they would absent consolidation, in violation of the procedural principles underlying consolidation.

Each of these arguments is separately addressed.

A.   The Verdict

Because defendants' new trial motion focuses chiefly on the lack of information provided by the jury in returning its verdict, analysis properly begins with a brief description of the jury verdict form, a copy of which is attached as Exhibit A to this Memorandum Opinion. The verdict form is divided into three sections. The first section asked the jury whether plaintiffs proved jurisdiction in the Eastern District of Virginia by a preponderance of the evidence. The second section—the heart of the jury form—asked whether the jury found for the plaintiffs against defendants on each of the five counts. Importantly, this section does not lump the counts together into one general verdict. Instead, the section is divided into five subsections for each of the five counts—(i) copyright infringement, (ii) registered trademark infringement, (iii) unfair competition and deceptive trade practices, (iv) conversion, and (v) civil conspiracy. In each

6

subsection, the jury was asked whether it found in favor of plaintiffs on that count, and if so, the jury selected which plaintiffs against which defendants it so found. Thus, the form allowed the jury to find for any grouping of plaintiffs against any grouping of defendants on any count, if consistent with the evidence presented.

The third and final section of the verdict form is central to defendants' present motion. This section, concerning damages, posed the following question to the jury:

> If you found any of the Defendants infringed Plaintiffs [sic] copyrights, registered trademarks, or unregistered trademarks, converted Plaintiffs' property, and/or engaged in a conspiracy to do those things that injured the Plaintiffs, you must determine the amount of damages that Plaintiffs are entitled to recover. On the following line, please state the total damages, if any, that you award to Plaintiffs in this case.

Verdict Form at 4. The verdict form then provided a space for the jury to write in the "Total Damages." *Id.* Yet, the damages section did not end there. Next, the form provided:

> If all of the Defendants that you found liable also were engaged in a conspiracy, you do not need to do anything else with respect to compensatory damages, because the Defendants will be jointly liable for that total amount.

> If you did not find that all of the Defendants that you found liable also were engaged in a conspiracy, you must specify, in dollars, the portion of the total damages identified above that each Defendant must pay to the plaintiffs.

*Id.* The form then provided space for the jury to allocate damages to each defendant, if necessary.

Following deliberations, the jury returned its verdict with the form properly completed. As to the first section of the form, the jury found that plaintiffs proved jurisdiction by a preponderance of the evidence. As to liability on the five counts enumerated separately in the second section of the form, the jury found in favor of all plaintiffs against all defendants on all counts. In the final section on damages, the jury awarded total damages in the amount of $26,000,000. Because the jury found that all defendants engaged in a civil conspiracy, the jury

7

properly left blank any further allocation of damages. After publication of the verdict, the jurors were polled individually to verify that the published, unanimous verdict reflected their individual verdict.

Defendants' attack on the jury's verdict is based chiefly on the fact that the jury was allowed to provide a figure for total damages, but did not require the jury to specify damages for each claim on which plaintiffs succeeded. Defendants argue that despite the jury's findings of liability on all claims, certain trademark claims failed in whole or in part, and since the verdict form did not require the jury to specify which damages are attributable to which legal theories, the damages award cannot stand. Plaintiffs counter that because disgorgement of defendants' profits was the measure of damages for all claims, including the copyright infringement claims, the jury's damages calculation would not have been different even if the failed trademark claims had not been presented to the jury.[15]

The question presented is not entirely novel in this circuit. The Fourth Circuit has addressed the question whether a general damages award must be vacated when one of several claims on which the verdict was based is later rejected on a post-trial motion or appeal. In *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1278 (4th Cir. 1994), the plaintiff prevailed on claims of malicious prosecution and intentional infliction of emotional distress, but the latter claim was overturned on appeal for failure to show the requisite outrageous conduct. The court held that "because the general verdict form did not apportion damages between" the two claims, the reversal of one of the claims compelled a new trial on the damages issue. *Id.* (citing *In Re Air*

---

[15] Plaintiffs also contend defendants waived their objection to the verdict form by failing to object at the time the verdict form was provided to the parties for their review and approval. While it is true that defendants did not then raise the specific argument they now advance, and while it might have been helpful had the point then been raised, defendants did timely object to the verdict form in a more general manner, and that general objection is sufficient to preserve defendants' right to object to the verdict form at this stage.

*Crash Disaster at New Orleans*, 795 F.2d 1230, 1235-36 (5th Cir. 1986)). This was so, the court noted, because the jury may have awarded a portion of the total damages exclusively for intentional infliction of emotional distress, and there was no way to tell how much of the damages were attributable to that claim. *Id.* at 1278. Put differently, there would have been no reason to upset the jury's verdict in *Barber* had the measure of damages been the same for both causes of action. This reading of *Barber* finds firm support in *Johnson v. Wal-Mart Stores*, 1999 U.S. App. LEXIS 9511, at *13-14 (4th Cir. May 19, 1999). There, the jury found for the plaintiff on false imprisonment and slander and awarded punitive damages, but the district court dismissed the slander claim post-verdict to prevent double-recovery of damages. Nevertheless, the general punitive damages award was not vacated because (i) the slander claim had not been dismissed for a lack of supporting evidence, but rather for a procedural issue; and (ii) both of the claims "individually and collectively" supported the punitive damages award. *Id.* The *Johnson* case differs from the case at bar in that a lack of evidence precipitated the dismissal of trademark claims on defendants' Rule 50(b) motion, but nevertheless, the *Johnson* case supports the proposition that a verdict need not be reversed when the damages were fully supported by the evidence. And similarly, in *Henderson v. Winston*, 1995 U.S. App. LEXIS 15833 (4th Cir. June 27, 1995), the Fourth Circuit held that a general verdict need not be overturned "where it is reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it." *Id.* at *13. This outcome comports with the "harmless error" rule, which requires a district court to "disregard all errors and defects that do not affect any party's substantial rights." Rule 61, Fed. R. Civ. P. Importantly, this rule avoids unnecessarily repeating an entire trial or phase of trial when it is clear that the jury's verdict was fully supported by the evidence.

The principles underlying these three cases are dispositive here. Thus, the cases teach that a jury verdict that includes a single damages award for multiple counts must not be set aside where one of the counts is dismissed post-verdict and where, as here, the measure of damages was the same for all counts.

Defendants make several arguments in opposition. In their first argument, defendants correctly point out that plaintiffs' claim for registered trademark infringement was dismissed on defendant's Rule 50(b) motion, and the claim for infringement of the plaintiffs' unregistered trademarks was only sustained on two of the eleven unregistered marks. Because all eleven claims were submitted to the jury, defendants argue that the award should be vacated since the award may reflect damages for the failed claims. This argument fails because the damages award in this case would have been the same regardless of whether all eleven or only two of the trademark claims were submitted to the jury. The measure of damages for each of the trademark claims was the same—disgorgement of profits. Moreover, disgorgement of profits was the proper measure of damages for both the trademark claims and the copyright claims, such that even without the trademark claims, plaintiffs would still be entitled to full disgorgement of defendants' profits for copyright infringement.[16] *See* 17 U.S.C. § 504(b) (damages for copyright infringement); 15 U.S.C. § 1117(a) (damages for infringement of registered or unregistered trademarks). As such, the dismissal of some of the trademark claims post-trial does not require overturning the general damages award. *See Henderson*, 1995 U.S. App. LEXIS 15833, at *13.

Moreover, in proving the proper amount for disgorgement, plaintiffs were only required to establish defendants' gross revenues from the infringing tires. Once this was done, the burden

---

[16] In addition to disgorgement, plaintiffs would ordinarily be entitled to actual damages for infringement—provided that actual damages were not double counted with disgorgement—but because plaintiffs did not seek actual damages in this case, the jury was instructed only as to disgorgement. *See* Tr. July 14, 2010, at 1578.

then shifted to defendants to show deductible expenses and profits attributable to factors other

than infringement. *See* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a). Significantly, the jury, without

objection, was properly instructed as to this proof scheme. On the copyright claims, the

instruction provided:

> If you find that any of the plaintiffs are copyright owners and that any of the
> defendants . . . infringed plaintiffs' copyrighted work, as the copyrighted owner
> [sic], plaintiffs are entitled to any profits attributable to infringement . . . .
>
> . . .
>
> Unless you find that a portion of the profit from the use or sale of a product or
> work containing or using the copyrighted work is attributable to factors other than
> the use of the copyrighted work, the total profit is attributable to infringement.
>
> Plaintiffs have the burden of proving gross revenue by a preponderance of the
> evidence. Defendant[s] ha[ve] the burden of proving expenses and the portion of
> the profits attributable to factors other than the copyrighted material by a
> preponderance of the evidence.

Tr. July 14, 2010, at 1561-62. Similarly, on the trademark claims, the jury, without objection,

was properly instructed as follows:

> [T]he plaintiffs are entitled to any profits earned by the defendants that are
> attributed to the infringement or unfair competition which plaintiffs prove by a
> preponderance of the evidence.
>
> . . .
>
> [U]nless you find that a portion of the profit from the sale of the tires using
> trademarks is attributable to factors other than the use of the trademark[s], you
> shall find that the total profit is attributable to the infringement.

*Id.* at 1577-78.

The credible evidence at trial was sufficient to allow the jury to conclude that all of

defendants' tires infringed on plaintiffs' copyrights. And, as to damages, plaintiffs presented

expert testimony concerning defendants' profits on the infringing tires, and defendants failed to

rebut this testimony with specific evidence showing that a only portion of the profits were not

attributable to their infringing conduct. Under those circumstances, the jury was entitled to award plaintiffs an amount equivalent to defendants' total profits on the sale of all of the infringing tires. Once plaintiffs established they were entitled to this disgorgement based on the copyright claims, the trademark claims provided no basis to enlarge or to vary the damages award. In other words, even absent the trademark claims, the damages calculus would have been the same; the total amount of plaintiffs' damages would be the disgorgement of defendants' total profits from the production of all infringing tires. Accordingly, defendants' attack on the jury's verdict based on the form of the verdict does not warrant vacating the jury's verdict and ordering a new trial.

Next, defendants argue that the potential damages differed between the trademark and copyright claims because each type of claim involved a different statute of limitations. Yet, this argument is a red herring because the statute of limitations is longer for the copyright claims than the trademark claims. *See In re Outsidewall Tire Litigation*, No. 1:09cv1217 (E.D. Va. June 29, 2010) (Order) (noting that the statute of limitations is three years for the copyright claims and two years for the trademark claims). As such, the limitations period for the trademark claims was entirely subsumed in the limitations period for the copyright claims. While the jury may well have discounted the total damages award based on the statute of limitations to avoid awarding damages for conduct taking place outside the three-year limitations period, the discount, if any, would not be affected by the trademark claims.

Defendants' next argument concerning the damages verdict focuses on the conspiracy claim. Defendants essentially argue that because the conspiracy claim was based on conversion, copyright infringement, and trademark infringement, one cannot know whether the jury awarded damages exclusively for conspiracy to commit trademark infringement. If the jury based such

damages on the trademark claims that were dismissed on defendants' Rule 50(b) motion, the damages award would be erroneous. This argument is also meritless. As the Supreme Court of Virginia has recognized, "[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination . . . to accomplish an unlawful purpose." *See Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84 (1942). Here, the torts underlying the conspiracy claim were the alleged acts of conversion, copyright infringement, and trademark infringement. Based on Virginia's law of civil conspiracy, plaintiffs could not recover greater damages for the conspiracy to commit the underlying unlawful acts than they could for the underlying acts themselves. But as already noted, the damages for the trademark infringement were entirely subsumed in the damages for the copyright infringement. It follows quite straightforwardly that even if the jury had not been presented a claim for conspiracy to commit trademark infringement, the damages award would not have changed.

While the conspiracy claim did not increase the total damages award above the damages arising from the underlying claims, the conspiracy claim did provide a basis for finding defendants jointly and severally liable for those damages. *See Ratcliffe v. Walker*, 117 Va. 569, 582-83, 85 S.E. 575 (1915). Defendants challenge this finding of joint and several liability because, in their view, the jury's verdict in favor of plaintiffs on the conspiracy count might have been premised solely on the failed trademark claims. This argument fails because the evidence of conspiracy adduced at trial applied with equal force to the claims of copyright infringement as trademark infringement. The jury found all defendants liable on both the copyright and trademark counts, and the evidence underlying those claims was inseparable from the evidence showing the defendants' agreement to commit such infringement. That is, the jury could not

have found a conspiracy to commit trademark infringement without also finding a conspiracy to commit copyright infringement. As such, the jury's verdict in favor of plaintiffs on the conspiracy claim stands, as does the finding of joint and several liability.

Defendants' next argument is a familiar one in this case, namely that the conversion and conspiracy claims were both preempted by the Copyright Act. Defendants unsuccessfully advanced this argument in their Rule 50(b) motion, and the argument fails here for the same reasons given in the July 21 Order. *See* July 21 Order, at 11, 13. As explained in that Order, the Fourth Circuit has held that a conversion claim is preempted by the Copyright Act only where a plaintiff fails to prove that the infringer "unlawfully retained the physical object embodying plaintiff['s] work." *U.S. ex rel. Berge v. Boart of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997). The *Berge* opinion makes clear that where a plaintiff alleges unlawful retention of the physical embodiment of the plaintiff's work, the conversion claim is not preempted. Here, plaintiffs alleged in their complaint, and proved at trial, that Vance took possession of plaintiffs' tire blueprints without authorization and unlawfully retained them for the purpose of designing defendants' infringing mining tires. Nor is the claim for conspiracy to commit copyright infringement preempted. The objects of the conspiracy were not only copyright infringement but also conversion and trademark infringement. Because these unlawful purposes are not equivalent to those listed in § 106 of the Copyright Act, the claim for conspiracy to commit copyright infringement is not preempted. Moreover, even if plaintiffs had alleged only conspiracy to commit copyright infringement, the claim would not be preempted

14

because the conspiracy claim involved a unique element, namely the agreement to commit a wrongful act.[17]

## B.    Excessiveness of Damages

Defendants also argue that the jury's damages calculation was excessive and against the clear weight of evidence. In considering a motion for a new trial, the district court may weigh the evidence and consider the credibility of the witnesses. *See Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir.1980). A review of the record makes unmistakably clear that the damages award was entirely consistent with the credible evidence adduced at trial. Plaintiffs' damages expert, Dr. Philip Nelson, calculated defendants' profits based on reliable methods and data. His opinions were not impermissibly speculative, and the jury was entitled to rely on his testimony to compute damages.

Defendants offer three further arguments with regard to the damages calculation that are easily dismissed. First, defendants argue that plaintiffs failed to present evidence of the fair market value of the blueprints to calculate damages for their conversion claim. As explained in the July 21 Order, Fishman testified that the value of the blueprints was essentially equivalent to the value of his business. *See* July 21 Order, at 12. Indeed, the parties understood that the present value of the blueprints at the time of the conversion was equal to the value of the future commercial exploitation of the blueprints. Dr. Nelson testified that, based on his calculations, the value of the blueprints to defendants' business was approximately $36 million. Based on this information, the jury could reasonably conclude that the fair market value of the converted blueprints was the total amount of profits earned by defendants from the exploitation.

---

[17] Defendants also argue that the jury instruction on contributory copyright infringement claim was erroneous because plaintiffs failed to plead such a claim in the complaint. This argument, too, is unavailing. Plaintiffs adequately pled that defendants contributed to Vance's infringement of plaintiffs' copyrights. *See* Second Am. Compl. Count V.

Defendants next argue that the verdict should be set aside because no acts of copyright infringement occurred in the United States. As discussed in the July 21 Order, this argument is also unavailing. *See* July 21 Order, at 14. As an initial matter, the evidence adduced at trial plainly showed (i) that in 2005 and early 2006, Vance copied plaintiffs' Alpha tire blueprints and modified them to create an infringing derivative work for defendants and (ii) that he did so in part in Virginia. It is true that none of these acts occurred in the United States after October 28, 2006, meaning the acts do not fall within the limitations period for the copyright claims. Indeed, both the manufacturing of the infringing tires based on Vance's work and the sales of such tires occurred outside the United States during the relevant limitations period. While the Fourth Circuit has not yet addressed whether extraterritorial exploitation of a copyright falls within the Copyright Act's jurisdiction when the domestic, predicate acts occurred prior to the limitations period, the Second and Ninth Circuits have sensibly held that such infringement is covered by the Act. *See L.A. News Serv. v. Reuters Tel. Int'l, Ltd.*, 340 F.3d 926, 928 (9th Cir. 2003); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).[18] Specifically, the Ninth Circuit has held that while "the Copyright Act does not apply extraterritorially, an exception may apply where an act of infringement is completed entirely within the United States and that such infringing act enabled further exploitation abroad." *L.A. News*, 340 F.3d at 928; *see also Update Art*, 843 F.2d at 73 (in the Second Circuit, holding that although "copyright laws generally do not have extraterritorial application[,] [t]here is an exception . . . when the type of infringement permits further reproduction abroad"). This rule ensures that domestic copyright infringers cannot escape liability for their infringing acts by exploiting the fruits of their infringement in

---

[18] The Sixth Circuit has also recognized that a court has subject matter jurisdiction over a copyright infringement action "as long as some act of infringement occurred in the United States," even if most of the infringing conduct took occurred abroad. *Liberty Toy Co. v. Fred ilber Co.*, No. 97-3177, 1998 U.S. App. LEXIS 14866, at *11 (6th Cir. June 29, 1998).

foreign markets. This rule is appropriately applied in this case. Defendants cannot escape the reach of the Copyright Act where, as here, they initiated and committed their infringing acts in the United States and then attempted to reap the spoils of their infringement by manufacturing and selling their infringing tires abroad. Thus, they are liable for the foreign acts implementing their unlawful infringement scheme.

Furthermore, the fact that the domestic acts of infringement occurred outside of the limitations period is irrelevant to defendants' liability, because the Copyright Act's statute of limitations limits the remedy, not the substantive rights, under the Act. *See Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (5th Cir. 1971) (holding that the limitations period would affects "the remedy only, not the substantive right" under the Copyright Act); *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1320 (11th Cir. 2008) (agreeing with the Fifth Circuit's analysis). Accordingly, defendants are liable for their foreign acts of infringement despite the fact that the domestic acts of infringement occurred before October 28, 2006.

Finally, defendants' argue that Virginia law was improperly applied to the claims in this action because the wrongful acts did not occur in Virginia. This assertion is plainly meritless, since there is no question that acts of infringement occurred in the Commonwealth of Virginia. The Supreme Court of Virginia has consistently held that it is the place of the wrong that determines which state's substantive law applies. *See Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. Va. 1986) (citing *McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979)).

In sum, the damages award was not excessive or against the clear weight of the evidence.

### C.    Evidentiary Issues

Defendants next allege several evidentiary errors that, in their view, justify granting a new trial. First, defendants argue that plaintiffs' file from the United States Patent and Trademark Office should have been admitted to impeach Fishman as to Fishman's testimony that his tire designs were original. The file, defendants assert, indicated that a patent examiner rejected one of Fishman's patents after concluding that the outsidewall tire design had already been patented by Bridgestone. This file was appropriately excluded at trial because it contained inadmissible hearsay. While hearsay may be used for the purpose of impeachment, such as when the statements were made by the witness himself, the statements in the patent file were not statements by Fishman, but rather statements of the patent examiner. Such statements would have no relevance unless admitted for the truth of the matter asserted, and admitting them for that purposes would violate Rule 802, Fed. R. Evid. Additionally, the probative value of this evidence was substantially outweighed by the danger of unfair prejudice in violation of Rule 403, Fed. R. Evid., given that the legal standards for the issuance of patents differ markedly from the standards for copyrights. *Compare* 35 U.S.C. §§ 101-103 (setting forth the requirements of novelty and nonobviousness for patents) *with Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 492 (4th Cir. 1996) (noting that for copyrights, "[o]riginality requires independent creation plus a modicum of creativity") (quotations omitted). Additionally, exclusion of this evidence under Rule 403, Fed. R. Evid., was appropriate given its slight probative value and the manifest, substantial potential for jury confusion. As such, the patent file was properly excluded.

Second, defendants argue that plaintiffs should not have been allowed to admit into evidence the business plan for selling infringing tires that Vance created for Al Dobowi defendants at the request of Surender Kandhari. Yet, this business plan constituted relevant,

admissible evidence concerning the scope of the conspiracy and defendants' production plan for the mining tires. Contrary to defendants' assertion, the business plan was not cumulative, nor was it inadmissible hearsay. Indeed, as to the hearsay question, the business plan constituted both a statement of a party opponent and a business record. *See* Rule 801(d)(2), Fed. R. Evid. (admissions by party opponents); Rule 803(6), Fed. R. Evid. (business records exception).[19] Accordingly, there was no error in allowing this plan into evidence.

Finally, defendants assert that they should have been allowed to admit the complaint and settlement agreement from the separate legal action previously filed by plaintiffs against their manufacturer, GTC. This evidence was properly excluded because the settlement pertained to a wholly separate litigation, and as such it makes no material fact in the present case more or less likely. Defendants were allowed to cross examine Fishman on provisions regarding the dissolution of TED based on statements in the GTC complaint, but having allowed this examination, there was no need to admit the documents in their entirety.

## D.   Liability for Conspiracy

Defendants also argue that the finding of liability for civil conspiracy went against the clear weight of the evidence. This argument has already been considered in reviewing defendants' Rule 50(b) motion, and as noted in the July 21 Order, the evidence fully supported the jury's finding on the conspiracy claim. July 21 Order, at 12-13. Indeed, the evidence adduced at trial showed that Al Dobowi defendants, Linglong Defendants, and Vance agreed to convert plaintiffs' property and to infringe plaintiff's intellectual property rights. This

---

[19] To the extent the business plan was drafted by Vance, it is a statement of co-conspirator of a party opponent acting in furtherance of the conspiracy. *See* Rule 801(d)(2)(E), Fed. R. Evid. To the extent the plan was adopted and approved by Surender Kandhari and other defendants, they are adopted admissions of party opponents. *See* Rule 801(d)(2)(B), Fed. R. Evid. Additionally, the business plan, as a statement of future intent, also may fall within the exception found in Rule 803(3), Fed. R. Evid. (state of mind exception).

agreement, the evidence showed, began in Richmond, Virginia with the meeting between Al

Dobowi defendants and Vance. Linglong defendants then joined the conspiracy by email and

telephone correspondence with Vance while Vance was operating out of his Tazewell, Virginia

home, knowing that acts in furtherance of the conspiracy would occur in Virginia. Accordingly,

the conspiracy claim is not against the clear weight of the evidence.[20]

### E.   Consolidation

Defendants' final argument rests on the notion that consolidating the cases allowed

plaintiffs to pursue joint and several liability over all defendants without having initially pled

joint and several liability. Essentially, defendants argue that prior to consolidation of the two

underlying cases in this matter, plaintiffs could only have sought joint and several liability as to

Al Dobowi defendants in the first action and as to Linglong defendants in the second action;

whereas, after consolidation, plaintiffs were allowed to seek joint and several liability across

both sets of defendants. This result, defendants' argue, violates the principle that consolidation

does not make parties to one suit into parties of the other suit. *See Johnson v. Manhattan R. Co.*,

289 U.S. 479, 497 (1933) ("[C]onsolidation is permitted as a matter of convenience and

economy in administration, but does not merge the suits into a single cause, or change the rights

of the parties, or make those who are parties in one suit parties in another."). Yet, this argument

sidesteps the fact that plaintiffs properly pled that the conspiracy involved all defendants in their

---

[20] Defendants claim that jurisdiction over the defendants in this case was improper because the conspiracy was never proven. Since the conspiracy claim is sustained, so, too, is the finding of jurisdiction over all defendants. *See Noble Sec, Inc. v. MIZ Eng'g, Ltd*, 611 F. Supp. 2d 513, 539 (E.D. Va. 2009) ("a defendant who joins a conspiracy knowing that acts in furtherance of the conspiracy have taken or will take place in the forum state is subject to personal jurisdiction . . . because the defendant has purposefully availed himself of the privileges of that state"); *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 622 (E.D. Va. 2002) (same); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009) (recognizing that the location of acts in furtherance of conspiracy affect whether coconspirators are subject to personal jurisdiction).

initial complaints in each of the underlying actions. The fact that plaintiffs sued defendants in separate actions does not prevent plaintiffs from arguing that all defendants, even those not named in a given suit, were members of the conspiracy. *See Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 464 (1945) (holding that co-conspirators are not necessary parties to an action).

Additionally, defendants have waived any objection to a finding of joint and several liability by failing to make a timely objection raising this consolidation argument at the time of consolidation or at any time prior to the jury's verdict. Indeed, defendants, at several points in the litigation, could have objected to allowing defendants to be held jointly and severally liable. Most critically, defendants failed to object to the language on the jury verdict form, which instructed the jury as follows:

> If all of the Defendants that you found liable also were engaged in a conspiracy, you do not need to do anything else with respect to compensatory damages, because the Defendants will be jointly liable for that total amount.

> If you did not find that all of the Defendants were engaged in a conspiracy, you must specify, in dollars, the portion of the total damages identified above that each Defendant must pay to the plaintiffs.

The jury found all defendants liable as members of a single conspiracy, and thus appropriately declined to allocate damages to each defendant. All parties were allowed time to review the verdict form and to make objections. Tr. July 14, 2010, at 1444-48. At no time did defendants object that the verdict form improperly allowed for a finding of joint and several liability. Accordingly, they cannot raise such an argument for the first time in their motion for a new trial. *See White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir. 1989) (per curiam) (holding that the failure to object to verdict prior to the discharge of jury waives new trial);

## IV.

Because defendants have not identified any errors that prejudiced their rights so as to necessitate a new trial, defendants' motion for a new trial must be denied.


An appropriate Order will issue.


Alexandria, Virginia
October 18, 2010

/s/
T. S. Ellis, III
United States District Judge

22