# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| IN RE: OUTSIDEWALL TIRE LITIGATION | C.A. No. 1:09-cv-1217 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DETERMINE VALUE OF GILBERT LLP'S LIEN FOR ATTORNEY'S FEES AND COSTS

William E. Copley
Virginia Bar No. 43960
August J. Matteis, Jr. (admitted *pro hac vice*)
WEISBROD MATTEIS & COPLEY PLLC
Attorneys for Plaintiffs-Judgment Creditors
1900 M Street, N.W., Suite 850
Washington, D.C. 20036
Telephone:    (202) 499-7901
Facsimile:    (202) 478-1795
wcopley@wmclaw.com

November 22, 2013

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ...................................................................................................2

I.    Fishman's Retention of Gilbert and Lawsuit Against Linglong and
Al Dobowi in this Court................................................................................ 2

II.    This Court's Judgment and the Attorney's Fees Petition that Gilbert
Filed on Fishman's Behalf............................................................................ 3

III.    Fishman Retains Weisbrod Matteis & Copley PLLC, and Gilbert Files
Notice of a Lien ............................................................................................ 5

IV.    Fishman's Success in Enforcing the Judgment through Garnishments ............................ 6

V.    Fishman's Unsuccessful Attempt to Negotiate a Reasonable Resolution
with Gilbert ................................................................................................ 7

VI.    Gilbert Sues Fishman and His Lawyers in Another Court Rather than
Participate in an Agreed Upon Negotiation .................................................... 9

VII.    Fishman Enters Into a Settlement Agreement with Linglong........................... 10

ARGUMENT ..................................................................................................... 11

I.    This Court Should Decide the Value of Gilbert's Lien for Reasonable
Attorney's Fees and Costs. .......................................................................... 11

II.    Gilbert is Not Entitled to the Fees and Costs that It has Demanded.............................. 16

    A.    Gilbert Is Entitled to No More than *Quantum Meruit* from Fishman's
Recovery. .......................................................................................... 17

    B.    The Fees that Gilbert Demands Are for Excessive Hours at Rates
this Court has Found to be Unreasonably High. ...................................... 19

    C.    Gilbert LLP's Demand for Costs is Excessive. ..................................... 23

CONCLUSION.................................................................................................. 27

## PRELIMINARY STATEMENT

Jordan Fishman and his companies, Tire Engineering & Distribution, LLC, Bearcat Tire A.R.L., and BCATCO A.R.L. (collectively "Fishman") seek a determination of the value of the lien that Gilbert LLP ("Gilbert") asserted in this case.  Gilbert has demanded that Fishman pay $4,542,228.50 in attorney's fees and $1,812,149.20 in expenses, for a total of $6,354,377.70.  Gilbert's demand is based on excessive hours billed at rates that this Court has held to be unreasonably high.  *See* Oct. 18, 2010 Order at 16 (ECF No. 344) ("Reasonable Fee Order").  Contrary to Gilbert's demand, the Supreme Court of Virginia held in *Heinzman v. Fine, Fine, Legum & Fine* that the Virginia Rules of Professional Conduct limit the fee that a discharged law firm may seek from a former client to *quantum meruit*.  *See* 217 Va. 958, 962-64 (1977).

Fishman would have preferred to resolve this issue without litigation.  After receiving Gilbert's demand and supporting material, Fishman made a proposal and asked for a meeting.  Gilbert agreed.  The parties scheduled a telephone negotiation for a few days later.  Yet, on the eve of that negotiation – which would have been the first discussion about the total amount Fishman owes to Gilbert – Gilbert sued Fishman and his attorneys in D.C. Superior Court and cancelled the negotiation by sending a "courtesy" copy of the complaint.

When it sued Fishman for fees and costs, Gilbert improperly prioritized its desire to avoid this Court over its obligation to try to resolve a fee dispute with a former client amicably.  Gilbert has no legitimate explanation for why it could not have waited until the day after the scheduled negotiation to sue Fishman.

Under controlling law, this Court has ancillary jurisdiction over this dispute and a virtually unflagging obligation to exercise it.  Gilbert asserted a lien under Va. Code § 54.1-3932, and it cannot avoid this Court's authority to value that lien by filing a complaint somewhere else.  The Fourth Circuit, this Court, and most other courts have recognized that the

court that has presided over a matter should decide any fee dispute arising out of that matter.

Having presided over the trial and Gilbert's subsequent fee petition, this Court has unique

knowledge of the nature and value of the legal services rendered, as well as an interest in fully

and fairly resolving the entire controversy.  Gilbert's attempt to turn this fee dispute into a

second major litigation in a different court with no knowledge of this case is a result that this

Court has held should be avoided in all instances.

　　　This Court previously provided substantial guidance regarding reasonable fees in this

case in its Reasonable Fee Order.  Gilbert's demand for fees and costs ignores that Order.

Gilbert seeks compensation for unedited time that includes more than five times the number of

hours this Court found to be reasonable, and it values those hours at rates this Court found to be

unreasonably high.  Gilbert's demand for expenses similarly is excessive, as it seeks

reimbursement for items more properly characterized as firm overhead and for expert expenses

that far exceed what courts in similar cases have deemed to be reasonable.  Moreover, it is

unclear whether Gilbert even read the documents it relies upon before demanding payment from

Fishman, as those documents include obviously improper entries, such as for legal services and

costs for other matters.  Accordingly, Fishman asks this Court to determine the amount of

*reasonable* fees and costs he owes as *quantum meruit* to Gilbert.

## BACKGROUND

I.　　**Fishman's Retention of Gilbert and Lawsuit Against Linglong and Al Dobowi in this Court**

　　　Fishman designs and sells highly specialized underground mining tires.  Beginning in

2005, Fishman's head of sales, Sam Vance, conspired with Al Dobowi[1] and Linglong[2] to steal

---

[1] "Al Dobowi" refers to Defendants Al Dobowi Ltd., Al Dobowi Tyre Co., LLC, Tyrex International, Ltd., and Tyrex International Rubber Co., Ltd.
[2] "Linglong" refers to Defendants Shandong Linglong Rubber Co., Ltd. (n/k/a Shandong

Fishman's blueprints and other confidential business information. Al Dobowi and Linglong copied Fishman's blueprints and sold knockoff tires around the world, which severely damaged Fishman's business.  Fishman sought counsel who could take his case on a contingent-fee basis and devise a strategy that could lead to recovery from the two elusive and conspiring tire companies, which were based in Dubai and China.

Jordan Fishman first met with Gilbert in the summer of 2009, and on August 4, 2009, he entered into an agreement for Gilbert to represent him on a contingent fee basis (the "Gilbert Engagement Letter").[3]  From that moment forward, August Matteis has performed the role of lead counsel for Fishman.  Fishman filed two complaints on October 28, 2009 against Al Dobowi and Linglong in this district, which were consolidated in this Court.  In January 2010, William Copley, a Virginia lawyer who was of counsel at Gilbert, entered an appearance in the matter.  Messrs. Matteis and Copley, assisted by other lawyers at Gilbert, litigated Fishman's case through trial.  On July 15, 2010, a jury returned a verdict for $26 million against Al Dobowi and Linglong, which this Court upheld on July 21, 2010.

## II.    This Court's Judgment and the Attorney's Fees Petition that Gilbert Filed on Fishman's Behalf

On August 2, 2010, Gilbert filed on Fishman's behalf a Motion for Reasonable Attorneys' Fees, Costs and Expert Witness Fees (ECF No. 264) ("Reasonable Fee Motion"). Through and including trial, Gilbert's unedited time billed to the matter at its normal hourly rates was $2,712,716.00.  *See* Reasonable Fee Motion at 2, n. 2.  Prior to submitting the fee petition to the Court, Gilbert exercised billing judgment to cut:

> (i) all time entries by non-lawyers; (ii) entries relating specifically
> to unsuccessful claims including misappropriation of trade secrets;
> (iii) time spent by newly assigned attorneys getting up to speed on

Linglong Group Co., Ltd.) and Shandong Linglong Tire Co., Ltd.
[3] A copy of the Gilbert Engagement Letter is attached as Exhibit 1.

the matter; (iv) travel and recovery time from counsels' trip to
Dubai; (v) non-legal tasks; and (vi) document review.

*Id.* at 13.  These cuts resulted in a fee request for $2,162,567.50, and a reduction of $550,148.50.

Gilbert also sought on Fishman's behalf to recover $931,154 in expenses for services

rendered by Fishman's damages expert, Dr. Phil Nelson.  In seeking those expenses, Gilbert

stated that "[j]ust as they did with their own bills, Plaintiffs' counsel have reviewed Dr. Nelson's

bills and eliminated time spent preparing lost profit analyses that were not used, preparing trial

exhibits, and other minimally substantive tasks."  Reasonable Fee Mot. at 14.

On October 18, 2010, this Court ruled on Fishman's request for reasonable fees,

awarding him $632,377.50 in attorneys' fees and nothing for expert expenses.  *See* Reasonable

Fee Order, attached as Exhibit 2.  This Court reasoned that "[d]espite plaintiffs' pre-submission

reduction of their billable hours, the 4,987.6 hours figure must still be significantly further

reduced."  *Id.* at 13.  This Court found that the fee petition unreasonably sought fees for legal

research for non-Lanham Act claims, litigation solely against Linglong (essentially Linglong's

challenge to personal jurisdiction), and still some document review.  *Id.* at 13-14.  This Court

ruled that the fees should be further reduced for inadequate documentation, including time

entries that "lumped" multiple tasks, and held:

> Taking all of these factors into account, including the reductions
> already made by plaintiffs themselves, it is appropriate to reduce the
> overall number of hours performed by the plaintiffs' attorneys by an
> additional 60%.  The total number of hours for which plaintiffs'
> counsel are entitled to attorneys' fees, therefore, is 1,959.

*Id.* at 14-15.

This Court then considered the reasonableness of Gilbert's hourly rates.  It held that "the

prevailing rates of attorneys in the District of Columbia are higher than the rates of attorneys in

Northern Virginia" and that the rates of certain lawyers at Gilbert "are unreasonably high on

4

their face." *Id.* at 16.  Moreover, the Court held that "attorneys in this locality can perform the

work required in this case competently for between $275 and $400 per hour." *Id.*  The Court

established a comprehensive reasonable fee schedule for the Gilbert lawyers who worked on the

case and determined the reasonable fee to be $632,377.50:

| Attorney/Employee | Title | Adjusted Hourly Rate | Adjusted Hours Per Timekeeper | Total |
|---|---|---|---|---|
| August Matteis | Partner | $400.00 | 393.9 | $157,560.00 |
| Scott Gilbert | Partner | $400.00 | 7.8 | $3,120.00 |
| Craig Litherland | Partner | $400.00 | 46.5 | $18,600.00 |
| William Copley | Counsel | $350.00 | 501.7 | $175,595.00 |
| Kathleen Hale | Associate | $275.00 | 650.9 | $178,997.50 |
| Aisha Williams | Associate | $275.00 | 358.2 | $98,505.00 |
| | | | | |
| ***Grand Total*** | | | *1,959* | *$632,377.50* |

## III.     Fishman Retains Weisbrod Matteis & Copley PLLC, and Gilbert Files Notice of a Lien

In October 2011, the attorneys that have represented Jordan Fishman since the inception

of this case, August Matteis and William Copley, left Gilbert with another partner to found their

own firm, Weisbrod Matteis & Copley PLLC ("WMC").  Both Gilbert and WMC offered to

represent Fishman.  After speaking with Gilbert's Chairman at length, Fishman decided to retain

WMC and continue to be represented by Messrs. Matteis and Copley.

On January 11, 2012, Barry Buchman, a Gilbert partner, entered an appearance in this

action on Gilbert's behalf to file a "Notice of Former Counsel's Lien."  *See* ECF Nos. 482 &

483.  In that Notice, Gilbert asserted a lien under Virginia law on this Court's docket:

> Please take notice that the firm GILBERT LLP ("Gilbert"), former
> counsel to Plaintiffs in the above captioned case, holds a lien upon
> the causes of action asserted by Plaintiffs herein as security for the
> fees and expenses owed to Gilbert in connection with its services
> rendered in relation to the causes of action asserted herein. The
> liens held by Gilbert include, without limitation, liens granted
> pursuant to VA ST § 54.1-3932.

Notice of Former Counsel's Lien, ECF No. 483.

**IV.    Fishman's Success in Enforcing the Judgment through Garnishments**

On June 6, 2012, the Fourth Circuit upheld this Court's $26 million judgment, and on

January 7, 2013, the Supreme Court of the United States denied *certiorari.  See Tire Eng'g &*

*Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292 (4th Cir. 2012), *cert. denied,*

133 S. Ct. 846 (2013).  The Fourth Circuit vacated the Reasonable Fee Order because it reversed

the verdict for Fishman under the Lanham Act (his sole basis for fees), but the Fourth Circuit did

not criticize how this Court calculated Gilbert's reasonable attorney's fees.

As expected, Defendants refused to pay any portion of the judgment, and Fishman since

has pursued enforcement, including filing proceedings to enforce subpoenas and garnishments

around the country against Linglong's distributors and to pierce through sham intermediaries that

Linglong foisted in an attempt to evade the judgment.  Fishman currently is litigating twelve

such actions.[4]  He also has issued restraining notices to several Chinese banks and initiated

lawsuits to compel those banks to turn over Linglong's and Al Dobowi's assets in their

possession.  Fishman currently is litigating the issue of whether New York courts can require a

bank to turn over a judgment debtor's assets held abroad when the court has personal jurisdiction

over the bank.  *See Tire Eng'g. & Distrib. LLC v. Bank of China*, 12 cv 9208 (S.D.N.Y), *on*

---

[4] The twelve garnishment actions are: *In re Outsidewall Tire Litig.*, 4:13-mc-01964 (S.D. Tex.)
(against American Omni Trading Co. L.L.C.); *In re Outsidewall Tire Litig.*, 4:13-mc-01964
(N.D. Ohio) (against Atlas Tire Co.); *In re Outsidewall Tire Litig.*, 4:13-mc-01964 (N.D. Ohio)
(against Hercules Tire and Rubber Co.); *In re Outsidewall Tire Litig.*, 2:13-mc-00315 (C.D. Cal.)
(against Horizon Tire Inc.); *In re Outsidewall Tire Litig.*, 13 MC 249, (D. Ore.) (against Icon
Tire Co.); *In re Outsidewall Tire Litig.*, 3:13-mc-00088 (N.D. Tex.) (against Maffeo Tire Group
LLC); *In re Outsidewall Tire Litig.*, 2:13-mc-00023 (W.D. Tenn.) (against TBC Corp.); *In re
Outsidewall Tire Litig.*, 2:13-mc-00315 (C.D. Cal.) (against Tireco, Inc.); *In re Outsidewall Tire
Litig.*, 2:13-mc-00315 (C.D. Cal.) (against Transcontinental Tire Co.);  *In re Outsidewall Tire
Litig.*, 1:13-mc-22577 (S.D. Fla.) (against Universal Tire International);  *In re Outsidewall Tire
Litig.*, 1:13-mc-22577 (S.D. Fla.) (against Zafco International Inc.); and *Tire Eng'g & Distrib.
L.L.C.,  v. Al Dobowi Ltd.,* 2:13-mc-00302 (D.N.J.) (against Foreign Tire Sales).

*appeal* 13-1519 (2d Cir., argued Oct. 11, 2013); *Tire Eng'g. & Distrib. LLC v. Indus. Comm. Bank of China*, 1:13-cv-06209 (S.D.N.Y).

Fishman's collection efforts have borne fruit.  He has recovered $536,124.88 in garnishment proceeds.[5]  More importantly, Linglong entered into an agreement on November 21, 2013 to pay Fishman an additional $15.5 million over the next two months to resolve its liability in this matter.  Matteis Decl. ¶ 6.

## V.      Fishman's Unsuccessful Attempt to Negotiate a Reasonable Resolution with Gilbert

In late September 2013, Fishman informed Gilbert that funds likely would be recovered in the following weeks as a result of the garnishment proceedings, and he attempted to reach an agreement with Gilbert regarding the amount and timing of the payment of funds.  As predicted, Fishman received the first $200,000 of his recovery from a garnishee on October 1, 2013, which was wired into WMC's client IOLTA account.

Gilbert and Fishman agreed that it was not necessary at that time to determine the full value of Gilbert's lien on the case, because both agreed that it was for more than $200,000. Unfortunately, Gilbert did not agree to any of Fishman's proposals about how to allocate the initial garnishment proceeds.  On October 2, 2013, Fishman attempted to send $100,000 (half of the garnishment proceeds) to Gilbert.  Gilbert asserted that the distribution was "in contravention of our filed lien."[6]  It then voided and returned the check for $100,000.[7]  In its transmittal letter, Gilbert wrote that payment was improper because Gilbert was entitled to everything Fishman collects until he has paid the entire amount that Gilbert demands:

---

[5] *See* Declaration of August J. Matteis ("Matteis Decl.") ¶ 5, attached as Exhibit 3.
[6] *See* email from S. Gilbert, Chairman of Gilbert, to A. Matteis, counsel for Jordan Fishman (Oct. 2, 2013), attached as Exhibit 4.
[7] *See* letter from B. Buchman, counsel for Gilbert as an interested party in this action, to A. Matteis (Oct. 3, 2013), attached as Exhibit 5.

> As you know, we assert a lien on any recoveries obtained in connection with the judgment obtained by Alpha Tire.  We contend that our lien applies to all recoveries obtained in connection with the judgment obtained by Alpha Tire.  We contend that our lien applies to all recoveries obtained until such time as the entire amount owed to us is paid in full.  We understand that you may dispute some portions of our lien or our priority to some proceeds.  But until any such dispute is resolved, we maintain our lien claims and our claims to priority.[8]

After Gilbert rejected the first payment, Fishman received another $336,124.88 in garnishment proceeds.  Hoping a broader discussion would be more fruitful, Fishman then sought to negotiate an overall resolution of Gilbert's lien and demand for fees and costs.  Fishman asked Gilbert to specify how much in fees and costs it was demanding and to provide documentation for that demand.  In response, Gilbert demanded $4,542,228.50 in fees and $1,812,149.20 in expenses, for a total of $6,354,377.70.

The spreadsheet that Gilbert provided to itemize its fee demand ("Gilbert Fee Spreadsheet") contains 4,648 entries and appears to include all of Gilbert's unedited time on this matter (and indeed time for other matters for other clients) from the day Jordan Fishman first met Gilbert lawyers through the day he terminated his engagement with Gilbert.[9]  Gilbert also sent a spreadsheet of its alleged costs ("Gilbert Expense Spreadsheet"), which includes numerous entries for categories of costs more appropriately categorized as overhead, such as internal copying, printing, and scanning, Westlaw and Lexis charges (Gilbert documents indicate a flat rate deal), and overtime meals and transportation.[10]  An analysis of each of the 4,648 unedited entries in the Gilbert Fee Spreadsheet ("Fee Analysis") and the 1773 unedited entries in the Gilbert Expense Spreadsheet ("Expense Analysis") stating line-by-line objections where appropriate are attached as Exhibits 8 and 9.

---

[8] *Id.*
[9] Gilbert Fee Spreadsheet, attached as Exhibit 6.
[10] A copy of the Gilbert Expense Spreadsheet is attached as Exhibit 7.

On Monday, November 11, 2013, Fishman provided Gilbert with a proposal for reasonable fees and costs based on the Fee Analysis, the Expense Analysis, and this Court's Reasonable Fee Order and requested that WMC and Gilbert meet to discuss this proposal.  Craig Litherland, Gilbert's Chief Executive Officer, agreed to speak by telephone that week.[11] Mr. Litherland asked Fishman for specific information for the negotiation, such as the total amount of garnishment proceeds.  In response, Fishman provided information regarding the garnishment proceeds that had been collected to date, as well as the fact that Fishman and Linglong were in settlement negotiations.  On Tuesday, November 12, 2013, Mr. Litherland agreed to participate in a telephone negotiation on Thursday, November 14, 2013.[12]  Mr. Litherland confirmed the call by providing a specific phone number.[13]

The call never happened.

## VI.   Gilbert Sues Fishman and His Lawyers in Another Court Rather than Participate in an Agreed Upon Negotiation

On the eve of the scheduled negotiation, Wednesday, November 12, 2013, Gilbert filed a lawsuit against Fishman and WMC in the Superior Court for the District of Columbia ("D.C. Complaint").[14]  Prior to filing that lawsuit, Gilbert did not discuss with Fishman the total amount of fees and costs allegedly owed, make a counteroffer, edit a single time entry, or even comment on Fishman's proposal.

Fishman learned that the November 14 telephone negotiation was cancelled when Gilbert sent a "courtesy" copy of the D.C. Complaint by email.[15]  The D.C. Complaint seeks $6,354,377

---

[11] *See* Email from C. Litherland to A. Matteis (Nov. 11, 2013), attached as Exhibit 10.

[12] *See* Email from C. Litherland to A. Matteis (Nov. 12, 2013 at 7:55 am), attached as Exhibit 11.

[13] *See* Email from C. Litherland to A. Matteis (Nov. 12, 2013 at 9:08 am), attached as Exhibit 12.

[14] A copy of the DC Complaint is attached as Exhibit 13.

[15] *See* Email from B. Buchman, counsel of record for Gilbert in this case, to A. Matteis, counsel for Fishman, regarding D.C. Complaint and cancelling negotiation (Nov. 13, 2013 at 2:14 p.m. EST), attached as Exhibit 14.

from Fishman for breach of contract, which represents every hour of unedited time at rates this

Court already declared unreasonable and every penny of claimed expense.  Attached to the D.C.

Complaint was Gilbert's engagement letter with Fishman, which was executed on August 4,

2009 ("Gilbert Engagement Letter") and provides on page 3 the following regarding termination:

> Alpha has the right to terminate our relationship at any time.  In the
> event that Alpha elects to terminate our representation, [Gilbert]
> will be entitled to a fee based upon the hours expended by the Firm
> on this representation at the hourly rates normally charged by the
> involved personnel for the type of work rendered.

The Gilbert Engagement Letter does not disclose Gilbert's "hourly rates normally

charged." *Id.*  The Gilbert Engagement Letter also provides that Fishman will not be required to

reimburse Gilbert unless he "receives a payment." *Id.*  On the other hand, "[i]f Alpha recovers

nothing, Alpha will not be charged for any costs or expenses." *Id.*  Gilbert also sued WMC for

tortious interference, conversion, and unjust enrichment for not immediately turning over all of

Fishman's garnishment proceeds to Gilbert.

## VII.    Fishman Enters Into a Settlement Agreement with Linglong

While Gilbert was focused on suing Fishman, Fishman was focused on enforcing his

Judgment and recovering proceeds from which he could pay Gilbert reasonable fees and costs.

On November 20, 2013, Linglong agreed to a settlement and to pay, in addition to the

approximately $536,124.88 Fishman already has collected, $15.5 million by January 15, 2014,

with $3 million due immediately.[16]  That $3 million will be added to the full amount that

Fishman has collected in enforcing his judgment to date, $536,124.88, in WMC's IOLTA

account.[17]

---

[16] Matteis Decl. ¶¶ 5-6 .
[17] Matteis Decl. ¶ 7.

## ARGUMENT

I.     **This Court Should Decide the Value of Gilbert's Lien for Reasonable Attorney's Fees and Costs.**

As a matter of controlling law, common sense, Gilbert's prior filings in this matter on its own behalf, and judicial economy, this Court should decide this fee dispute.  This Court has ancillary (supplemental) jurisdiction over this fee dispute because the dispute arises out of the services that Gilbert provided in this case.  28 U.S.C. § 1367.  The Fourth Circuit's seminal case on this issue is *American Federation of Tobacco Growers, Inc. v. Allen*, in which it held:

> It is argued that the controversy over fees is one which the parties
> should settle in the state courts as there is no diversity of
> citizenship; but the controversy is ancillary to the handling of a
> case in the federal court, the attorney who alleges that he has been
> mistreated is an officer of the court engaged in the handling of the
> case there pending, and the controversy relates to funds received
> by a party in a settlement of the case ….

186 F.2d 590, 592 (4th Cir. 1951); *see also Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003) (holding that attorney's "claim that she was entitled to attorney's fees … for work she performed in connection with the [lawsuit]… is clearly an attorneys fees dispute arising from the [lawsuit] and, therefore, it was incumbent upon [the district court] to resolve the dispute."); *Rhoades v. Procunier*, 624 F. Supp. 564, 566-67 (E.D. Va. 1986).[18]

A district court's ancillary jurisdiction to resolve a fee dispute between a party to litigation and its former lawyer in a pending case is necessary for judicial economy and to

---

[18] The decisions of other Federal Courts of Appeals are in accord.  *See Kalyawongsa v. Moffett*, 105 F.3d 283, 287-88 (6th Cir. 1997); *Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212, 217 (3d Cir. 1987); *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc.*, 863 F.2d 251, 256 (2d Cir. 1988); *Grimes v. Chrysler Motors Corp.*, 565 F.2d 841, 844 (2d Cir. 1977); *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th  Cir. 1982); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).  *See also* 13 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3523.2 (3d ed.) ("One of the best-established uses of ancillary jurisdiction is over proceedings concerning costs and attorney's fees.  Ancillary jurisdiction supports disputes concerning costs and fees for the case that invoked federal subject matter jurisdiction.").

preserve a district court's authority to provide a full and fair resolution of the litigation. As the

Sixth Circuit explained in *Kalyawongsa v. Moffett*,

> Lawyers are officers of the court. Their fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.

105 F.3d 283, 287-88 (6th Cir. 1997).

Gilbert's fee dispute with Fishman indisputably relates to this action. Gilbert intervened

in this case as an interested party to file a Notice of Lien under Va. Code § 54.1-3932 and to

assert "a lien *upon the causes of action asserted by Plaintiffs herein* as security for the fees and

expenses owed to Gilbert in connection with its *services rendered in relation to the causes of

action asserted herein*." Gilbert Lien at 1 (emphasis added).

In addition to this Court's ancillary jurisdiction, district courts have authority to

determine the value and validity of a lien that is asserted on their docket. As the Sixth Circuit

held in *Kalyawongsa*, "[w]e have held above that the district court had supplemental jurisdiction

over this question as a matter of federal law and that jurisdiction includes the authority to

determine the amount of the lien." 105 F.3d at 288; *see also Abrams v. Se. Mun. Bonds Inc.*, 138

Fed. App'x 88, 93-94 (10th Cir. 2005) (affirming decision invalidating notice of attorney's lien);

*Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 120 (9th Cir. 1995).[19] Were the rule

_____

[19] *See also Davis v. Kutak Rock, LLP*, 09-CV-02768, 2012 WL 975836, at *2 (D. Colo. Mar. 22, 2012) (determining validity of lien after discharged attorney filed notice); *Brown v. Globe Union, a Div. of Johnson Controls, Inc.*, 694 F. Supp. 795, 802 (D. Colo. 1988) (determining value of lien after notice filed by insurance company to protect its subrogation rights); *Hinshaw*

otherwise, a plaintiff like Jordan Fishman would have no reasonable remedy to challenge an invalid or overreaching notice of lien filed in his or her case.

That Gilbert filed an action in D.C. Superior Court long after it intervened to file a notice of lien here does not diminish this Court's authority to decide this issue.  "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992).  Under such circumstances, "federal courts have a virtually unflagging obligation to exercise their jurisdiction." *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008).  That obligation is particularly strong where the other action was "a contrived, defensive reaction." *McLaughlin*, 955 F.2d at 935.

In this case, Gilbert improperly prioritized its desire to avoid this Court over its obligation to seek amicable resolution of a fee dispute with a former client.  *See* Va. Legal Ethics Op. 1246 (advising that "a lawyer should be zealous in his efforts to avoid controversy over fees with his clients and should attempt to resolve amicably any differences on the subject").  Gilbert agreed to negotiate the fee dispute with Fishman, scheduled that negotiation, sought information from Fishman under the false pretense of preparing to negotiate, and then instead sued Fishman on the eve of the negotiation without further talking to him.

This Court is in the best position to value Gilbert's lien for fees and costs.  Gilbert's request for the D.C. Superior Court to convene discovery and a trial regarding the value of legal services provided in this Court is inefficient and likely to produce an inferior result.  The Fourth Circuit has held repeatedly that "[i]t is important that the district court remain primarily responsible for resolving fee disputes, because it is in the better position to evaluate the quality

---

*v. Vessel M/V Aurora*, C05-3927, 2007 WL 4287567, at *2-3 (N.D. Cal. Dec. 6, 2007); *Farb v. Baldwin Union Free Sch. Dist.*, 05-0596, 2011 WL 4465051, at *1, 15 (E.D.N.Y. 2011).

and value of the attorney's efforts." *Nat'l Wildlife Fed. v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988). Thus, "because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).[20] This Court likewise has held repeatedly that it "is in the best position" to determine the appropriate attorney's fees in a case it has adjudicated. *See, e.g., Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 444 (E.D. Va. 2007); *Rucker v. Sheehy Alexandria, Inc.*, 255 F. Supp. 2d 562, 565 (E.D. Va. 2003); *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988) (noting this Court's "first-hand knowledge of the case and the pertinent factors that might affect a fee amount"). On this very point, the Sixth Circuit in *Kalyawongsa* held that "[u]nlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues." 105 F.3d at 287. In this case, this Court is even more obviously the appropriate venue because it already has given substantial thought to reasonable fees in this case.[21] *See* Reasonable Fee Order.

Gilbert's separate action in D.C. Superior Court brings about the very kind of duplicative and wasteful litigation that this Court has held should be avoided "in all instances":

> And, in all instances, it is important to remember that "[a] request for attorney's fees should not result in a second major litigation." In other words, the tail should not wag the dog.

---

[20] *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990).

[21] This Court also is in a superior position to determine reasonable rates in this case, as the Fourth Circuit has held that D.C. rates are inapposite to fee requests in the Eastern District of Virginia. *Grissom*, 549 F.3d at 323; Reasonable Fee Order at 16; *Jackson v. Estelle Place, LLC*, 1:08-cv-984, 2009 WL 1321506, *2 (E.D. Va. May 8, 2009) (holding that "the *Laffey* Matrix, which was developed in the District of Columbia, does not accurately reflect the prevailing rates in Northern Virginia, where this case was litigated"); *Alford v. Martin & Gass, Inc.*, 1:08-cv-595 (LMB), 2009 WL 2447936, at *4 (E.D. Va. Aug. 3, 2009) (same).

*Synthon IP*, 484 F. Supp. 2d at 444 (quoting *Hensly v. Eckerhart*, 461 U.S. 424, 433 (1983)). The D.C. Superior Court should not be required to adjudicate, and Fishman should not be forced to litigate, an entire case just to educate another court about what happened here.

This Court is the correct venue for this dispute also because Virginia's law and ethics rules control. Fishman hired Gilbert as Virginia attorneys to conduct litigation in a Virginia court, and Gilbert's right to *quantum meruit* compensation arises solely from the existence of a judgment rendered here. Gilbert noticed its lien in this case under Va. Code § 54.1-3932, and it has not identified, much less provided notice of, any other basis for restraining Jordan Fishman's garnishment proceeds.[22]

The Virginia Rules of Professional Conduct ("VRPC") limit the fee that Gilbert can seek from its former client to *quantum meruit*. *See Heinzman*, 217 Va. at 962-64. The VRPC apply in this case pursuant to Local Rule 83.1(I), which states that "[t]he ethical standards relating to the practice of law in civil cases in this Court shall be Section II of Part Six of the Rules of the Virginia Supreme Court as it may be amended or superseded from time to time." VRPC 8.5(b)(1) likewise provides that "the rules to be applied shall be the rules of the jurisdiction in which the court, agency, or other tribunal sits, unless the rules of the court, agency, or other

---

[22] In the D.C. Complaint, Gilbert presumes that the Gilbert Engagement Letter restrains the proceeds of the judgment apart from the lien that Gilbert has asserted under Va. Stat. § 54.1-3932. Gilbert has identified no provision in that Letter that could give it such a right. Moreover, Va. Code § 54.1-3932 grants to WMC the same lien that it grants to Gilbert. As this Court held in *Montavon v. U.S.*, "[u]nder Virginia law, such a lien comes into existence on the making of the contract of employment between the client and attorney, but then remains inchoate until judgment or recovery is obtained." 864 F. Supp. 519, 522 (E.D. Va. 1994). In litigating in the Fourth Circuit, Supreme Court of the United States, 12 garnishment actions around the country to enforce Fishman's judgment, and two cases against Chinese banks in New York, including a case it has litigated, briefed, and argued to the Second Circuit, WMC also has incurred substantial expenses. In the interest of facilitating this Court's resolution of this issue, WMC will agree to refrain from seeking its due fees and costs from the disputed funds already in its possession for as long as Gilbert's fee dispute with Fishman remains pending before this Court.

tribunal provide otherwise." This Court's incorporation of the VRPC into its local rules "serves

to avoid detriment to the public's confidence in the integrity of the bar that might result from

courts in the same state enforcing different ethical norms." *In re Congoleum Corp.*, 426 F.3d

675, 687 (3d Cir. 2005). Courts repeatedly have held that law firms, including Gilbert, must

comply with state ethics rules in actions before district courts that have adopted those rules.

Thus, in *In re Congoleum Corp.*, the United States Court of Appeals for the Third Circuit held

that Gilbert was bound by the New Jersey Rules of Professional Conduct with respect to its

representation of clients in the District of New Jersey. *See id.* at 687-691.[23]

## II.    Gilbert is Not Entitled to the Fees and Costs that It has Demanded.

Jordan Fishman does not dispute Gilbert's right to compensation for reasonable hours at

reasonable rates out of the proceeds of his judgment. He does, however, dispute Gilbert's claim

to excessive fees based on unedited time billed at rates that were not disclosed to him at the

outset of the representation and that this Court has found to be unreasonably high. Reasonable

Fee Order at 16. In paragraphs 23-31 of the D.C. Complaint, Gilbert demands fees of "over $4.5

million" and costs of "$1.8 million," and it contends that Fishman breached a contract by failing

to pay those costs and fees before, and regardless of, collection of the Judgment. The fees that

---

[23] *See also Archuleta v. Turley*, 904 F. Supp. 2d 1185, 1191 (D. Utah 2012) (holding that
"attorneys are bound by the local rules of the court in which they appear. Federal district courts
usually adopt the Rules of Professional Conduct of the states in which they are situated."); *Paul
v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C. 2008) (holding that "[t]he District of
Columbia Rules of Professional Conduct govern the practice of law in this District"); *Hartford
Cas. Ins. Co. v. A&M Assocs., Ltd.*, 200 F. Supp. 2d 84, 87 (D.R.I. 2002) ("The conduct of a
Rhode Island attorney, when practicing law within the State of Rhode Island and in relation to
litigation pending in the United States District Court in Rhode Island, necessarily must be
governed by the Rhode Island Rules of Professional Conduct."); *In re Alvarado*, 363 B.R. 484,
490 (Bankr. E.D. Va. 2007) (citing local rule to hold that "[t]he ethical standards relating to the
practice of law in this Court are the Virginia Rules of Professional Conduct"); *In re Soulisak*,
227 B.R. 77, 80 (Bankr. E.D. Va. 1998) ("Attorneys who practice before a bankruptcy court
must not only concern themselves with the obligations set forth in the Bankruptcy Code and the
Federal Rules of Bankruptcy Procedure, but also with the application of state ethical rules.").

Gilbert demands are almost nine times the amount this Court found to be reasonable in the Reasonable Fee Order.  *Id.*  Although the Reasonable Fee Order excluded certain tasks that could be compensable – such as research for claims not arising under the Lanham Act and services provided after October 18, 2010 – those differences do not justify the multiplication of fees that Gilbert seeks.

### A.   Gilbert Is Entitled to No More Than *Quantum Meruit* from Fishman's Recovery.

Gilbert seeks fees for excessive hours, many of which it exercised billing discretion not to seek when it previously filed a fee petition for Fishman in this case.  In its D.C. Complaint, Gilbert presumes that its Gilbert Engagement Letter with Fishman obviates the need to analyze whether its fees are reasonable.  Gilbert is wrong for three reasons.

*First*, VRPC 1.5(a) prohibits Gilbert from seeking unreasonable fees.  As a result, the Supreme Court of Virginia has held that "[a]n attorney who seeks to recover legal fees from a present or former client must establish, as an element of the attorney's *prima facie* case, that the fees charged to the client are reasonable."  *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 96 (1997).

*Second*, under controlling Virginia law, Gilbert's right to attorneys fee is limited to *quantum meruit*.  In *Heinzman*, the Supreme Court of Virginia rejected the very argument that Gilbert has sued Fishman to raise – "that when the discharge is without just cause, the act constitutes a breach of contract and that the measure of damages is the fee fixed in the contract." 217 Va. at 963.  In doing so, the Court emphasized that "[c]ontracts for legal services are not the same as other contracts" because even in negotiating the terms of the retention a client "must rely upon the knowledge, experience, skill, and good faith of the professional."  *Id.*  Accordingly, a

17

client's unfettered right under the VRPC to terminate a contract for legal services for any reason

precludes a discharged firm like Gilbert from suing its former client for breach of contract:

> That the client may at any time for any reason or without any reason
> discharge his attorney is a firmly-established rule … (T)he attorney
> may recover the reasonable value of the services which he has
> rendered but he cannot recover damages for the breach of contract,
> because it is a term of such contract, implied from the peculiar
> relationship which the contract calls into existence, that the client
> may terminate the contract at any time with or without cause.

*Id.* (quoting *Martin v. Camp*, 219 N.Y. 170, 174 (1916)).  The Court held that any greater

recovery than *quantum meruit* would infringe upon the client's unconditional right under the

VRPC to discharge his or her lawyer, and contravene the rule that "[a] lawyer shall not enter into

an agreement for, charge, or collect an illegal or clearly excessive fee."  *Id.* at 962-64 and n.2.

> Having in mind the special nature of a contract for legal services,
> we hold that when, as here, an attorney employed under a
> contingent fee contract is discharged without just cause and the
> client employs another attorney who effects a recovery, the
> discharged attorney is entitled to a fee based on *quantum meruit*
> for services rendered prior to discharge and, as security for such
> fee, to the lien granted by Code § 54-70.

*Id; see also Hughes v. Cole*, 251 Va. 3, 23 (1996).  Thus, as this Court summarized in *In re*

*Moffitt, Zwerling & Kemler, P.C.*, "[a] client may always discharge his attorney and, in that

event, the fee is limited to a reasonable fee for actual services rendered upon a *quantum meruit*

basis, regardless of any contract to the contrary."  846 F. Supp. 463, 472 n.27 (E.D. Va. 1994).

  *Third*, Gilbert never disclosed the rates it seeks to make Fishman pay at the outset of the

engagement.  VRPC 1.5(b) requires that the "rate of the fee shall be communicated to the client,

preferably in writing, before or within a reasonable time after commencing the representation."

The Gilbert Engagement Letter failed to do so, and merely referenced "hourly rates normally

charged by the involved personnel for the type of work rendered."  *See* DC Complaint ¶ 11.

**B.      The Fees that Gilbert Demands Are for Excessive Hours at Rates this Court has Found to be Unreasonably High.**

This Court decided many of the issues regarding the appropriate attorney's fees in this case in the Reasonable Fee Order.  The hours and rates that Gilbert sued Fishman for refusing to pay far exceed what this Court found to be reasonable:

| Item | Reasonable Fee Order | Gilbert Demand[24] |
|---|---|---|
| Total Hours | 1,959 | 10,955.8 |
| Total Fees | $632,377.50 | $4,542,228.50 |
| Scott Gilbert ("SDG") Hourly Rate | $400 | $850-$900 |
| Craig Litherland ("CJL") Hourly Rate | $400 | $750-$775 |
| August Matties ("AJM") Hourly Rate | $400 | $525-$600 |
| William Copley ("WEC") Hourly Rate | $350 | $475-$525 |
| Kathleen Hale ("KH") Hourly Rate | $275 | $375-$425 |
| Aisha Williams ("ALC") Hourly Rate | $275 | $375-$425 |

Gilbert is not entitled to the hours, rates, and fees it has demanded.

In determining the value of Gilbert's *quantum meruit* claim and lien, this Court should "look[] to 'the reasonable value of the services rendered, not in benefit to the client, but, in themselves.'" *Heinzman*, 217 Va. at 964 n.4.  "The most useful starting point" is the lodestar amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In this regard, "[p]roper documentation is the key to ascertaining the number of hours reasonably spent on legal tasks."  *See EEOC*, 685 F. Supp. at 573.  Courts also have recognized that the twelve factors from *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) are relevant.  However, as this Court reasoned in its Reasonable Fee Order at 17, and the Supreme Court held in *Perdue v. Kenny A. ex rel. Winn*, the *Johnson* factors rarely warrant a fee enhancement because "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable'

---

[24] *See* Gilbert Hours Spreadsheet, Exhibit 6. The rates that Gilbert seeks increased over time. The range identifies the lowest and highest rate that Gilbert seeks.

19

attorney's fee," enhancement should be "rare and exceptional," and it "may not be awarded based on a factor that is subsumed in the lodestar calculation." 559 U.S. 542, 552-53 (2010).

Gilbert's fee demand is irreconcilable with both this Court's Reasonable Fee Order and the fee petition it filed when it was seeking fees for – rather than from – Fishman. This Court determined Gilbert's reasonable rates in this case based on what "seasoned litigators of similar age and experience in this area charge." Reasonable Fee Order at 17; *see Grissom*, 549 F.3d at 322-23 (holding that hourly rate of $450 was unreasonable and that hourly rate of $380 would be more appropriate).[25] Similarly, the hours for which Gilbert seeks fees are excessive. In determining a reasonable fee, this Court should "exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' as such hours are not reasonably expended on the litigation." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va. 2012). Here, Gilbert not only has failed, but has refused stridently, to exercise requisite billing judgment. *See* Reasonable Fee Order at 12. Indeed, the 10,955.8 hours for which it seeks fees are more than five times the hours that this Court previously deemed reasonable.

The Gilbert Fee Spreadsheet contains 4,648 entries for $4,542,228.50 in fees for 10,955.8 hours, which is consistent with Gilbert's demand for "over $4.5 million in fees calculated on an hourly basis at normal hourly rates" in the D.C. Complaint.[26] It reflects that Gilbert seeks

---

[25] *See also Robinson*, 560 F.3d at 245 (district court abused discretion in relying upon D.C.-based *Laffey Matrix* to justify granting $425 per hour requested rate for case in this district); *Auto. Fin. Corp. v. EEE Auto Sales, Inc.*, 1:10-cv-1407, 2011 WL 3422648, at *8 (E.D. Va. Aug. 3, 2011) (finding reasonable market rates in Northern Virginia to be "$335-380 for a partner with 18 or more years of experience and $250 for an associate with five to seven years of experience"); *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, 2:07-cv-530, 2009 WL 4841017, at *7 (E.D. Va. Oct. 23, 2009) (in complex commercial case, holding that "a rate of $350/hour would be reasonable and appropriate" for a "law firm partner with 15 years of experience"); *Alford v. Martin & Gass, Inc.*, No. 1:08-cv-595, 2009 WL 2447936, at *5 (E.D. Va. Aug. 3, 2009) ($350 per hour reasonable for experienced counsel).

[26] *Compare* last page of Gilbert Spreadsheet, Ex. 6, *with* D.C. Complaint ¶ 28.

compensation for every second any person wrote down on the matter with no editing whatsoever, in violation of its obligation "to exercise billing judgment." *See* Reasonable Fee Order at 12. For example, it reflects entries for time spent on other matters,[27] as well as for travel time for a trip to Dubai, even though Al Dobowi already paid Gilbert for those fees pursuant to this Court's May 24, 2010 Order.[28]

Gilbert is seeking substantial compensation for categories of time that it excluded when it previously filed a fee petition for, rather than against, Fishman. Specifically, Gilbert excluded from the fee petition it filed on Fishman's behalf:

> (i) all time entries by non-lawyers; (ii) entries relating specifically to unsuccessful claims including misappropriation of trade secrets; (iii) time spent by newly assigned attorneys getting up to speed on the matter;[29] (iv) travel and recovery time from counsels' trip to Dubai; (v) non-legal tasks; and (vi) document review.

Reasonable Fee Order at 13. This Court found those reductions appropriate but insufficient. This Court held that further reduction was necessary because not all document review time had been removed. *Id.* at 14. It also noted that Gilbert's documentation was inadequate and included "several instances of lumping." *Id.* Based on these and other factors which Gilbert's "own reduction of their fee submission" on Fishman's behalf did "not sufficiently address," the Court reduced Fishman's right to recover attorney's fees by another sixty percent. *Id.* at 15. Gilbert should not be permitted to seek fees from Fishman for categories of time that it previously exercised "billing judgment" not to seek on his behalf. If those hours were not reasonable then, they are not reasonable now.

---

[27] *See, e.g.,* Gilbert Spreadsheet (entries by K. Hale on Oct. 6, 2009, April 14, 2010 (three incorrect entries), June 8, 2010, and August 18, 2010; three entries by D. Sugimura ("DYS") on May 6, 2010; entry by L. Martinez ("LCM") on November 1, 2010). Each of Gilbert's improper requests for Fishman to pay for time the firm spent on other matters is documented in the line-by-line Fee Analysis attached as Exhibit 8.

[28] *See* Fee Analysis, A. Matteis and W. Copley entries on June 5-6 and 11-12, 2010.

[29] In the Fee Analysis, "NAA" is an objection to time spent by a newly assigned attorney.

The Fee Analysis attached as Exhibit 8 is a line-by-line analysis the 4,648 entries for which Gilbert seeks compensation, and it documents with particularity Fishman's objections to entries that are irreconcilable with Gilbert's prior determination of reasonable hours or otherwise facially excessive or unreasonable.  In addition to time that Gilbert excluded from the petition it filed on Fishman's behalf, Gilbert also inappropriately seeks compensation for time that provided little or no benefit to Fishman, such as summer associate time, associate observation opportunities, and meetings and tasks devoted to managing the firm's investment rather than litigating the case, as well as duplicative, inefficient, and excessive hours for the task specified.

Gilbert's post-trial hours appear to be particularly excessive.  Gilbert's total unedited hours are 10,955.8, but the hours it submitted through trial only were 4,897.6.[30]  Thus Gilbert appears to be seeking fees for roughly as many hours of post-trial work as it seeks for work through trial.  Although some fees are appropriate for Gilbert's preparation of Fishman's Appellees' brief to the Fourth Circuit, the post-trial hours are excessive given that Gilbert did not file a single post-trial enforcement action on Fishman's behalf.

Removing the objectionable entries reduces Gilbert's compensable hours from 10,955 to 5,879, a number of hours still three times more than this Court found to be reasonable in its Reasonable Fee Order at 16.  Applying the rates from the Reasonable Fee Order to those reduced hours produces a fee of  $1,984,984.25.[31]  However, those reductions only account for the facial deficiencies in Gilbert's time, and the lack of detail in certain entries made it impossible to ascertain the validity of the entry.  This Court previously has held that Gilbert's documentation was inadequate.  *See* Reasonable Fee Order at 14.  Accordingly, Fishman asks this Court to impose an additional 30 percent reduction and to determine that Gilbert is entitled to *quantum*

---

[30] *Compare* Gilbert Spreadsheet *with* Reasonable Fee Order at 12.
[31] *See* Fee Analysis, attached as Exhibit 8.

*meruit* fees in this case of no more than $1,389,488.80, which still is more than twice the amount

this Court previously awarded in its Reasonable Fee Order after trial.

### C.    Gilbert LLP's Demand for Costs is Excessive.

Fishman likewise does not dispute that Gilbert should be reimbursed for costs it

reasonably incurred in this case.  However, Gilbert has sued Fishman to recover costs that are

excessive and unreasonable.  According to the expense spreadsheet that Gilbert provided

("Gilbert Expense Sheet") and the D.C. Complaint, Gilbert is seeking $1,812,149.2 in costs.[32]

As with fees, Fishman has analyzed those expenses line-by-line ("Expense Analysis") to note

facially objectionable costs, and that Expense Analysis is attached as Exhibit 9.

Gilbert's demand for expense reimbursement is excessive because it seeks reimbursement

for unreasonable expert costs as well as categories of costs that are more appropriately

categorized as overhead.  To be reimbursable, expenses must be reasonable. "Attorneys are

clearly not entitled to reimbursement of expenses where the request is for an amount which is

excessive or otherwise noncompensable."  *In re Bausch & Lomb, Inc. Sec. Litig.*, 183 F.R.D. 78,

89 (W.D.N.Y. 1998).  In this case, Gilbert seeks to charge Fishman for overhead costs such as,

internal copying, printing, and scanning, telephone charges, online legal research charges

(Gilbert has flat rate arrangements), and overtime meals, transportation, and HVAC.[33]

---

[32] The Gilbert Expense Sheet is attached as Exhibit 7.

[33] *See also Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 12 F.3d 269, 272 (D.C. Cir. 1994) (rejecting expense request for "photocopying and telefaxing as unreasonable"); *Simmons v. O'Malley*, 235 F. Supp. 2d 442, 444 (D. Md. 2002) (disallowing "requested cost for in-house copying"); *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1257 (N.D. Ill. 1993) (disallowing as overhead expenses for cell phone charges, facsimile transmissions, meals, overtime, purchase of publications, etc.); *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 827 (D. Me. 1992), *aff'd sub nom. BTZ, Inc. v. Great N. Nekoosa Corp.*, 47 F.3d 463 (1st Cir. 1995) (disallowing online research charges and reducing other charges by 80 percent).

Other expense charges are obvious mistakes.  Gilbert seeks to charge Fishman $82 for a gift it sent to him on September 9, 2011, while he was in the hospital recovering from hip surgery.  It also seeks to charge him for an $845.05 bill for a dinner on or around June 9, 2010 that Gilbert's chairman, Scott Gilbert, hosted and invited him to attend with Craig Litherland and August Matteis.  Gilbert even seeks to charge Fishman for alcohol it purchased for a firm party.[34] Like Gilbert's fee request, Gilbert's expense request contains entries for costs incurred in other matters.[35]  These entries indicate that Gilbert failed even to review the records it purports to rely upon in seeking millions of dollars of fees and expenses.  Removing the inappropriate entries, Gilbert's reasonable expenses, other than for experts, are $292,557.67.

Expert expenses, however, comprise the overwhelming majority of the expenses that Gilbert seeks.  Gilbert seeks $45,660 in expert fees for the services of technical expert Raymond Evans in this case, and Fishman does not contest the reasonableness of those fees.  However, Fishman does contest as excessive the $1,394,531 (an amount *thirty* times what was paid to the technical expert) that Gilbert seeks for the services of damages expert Dr. Phil Nelson and his staff (the "Nelson Fees").

Gilbert "has the burden of demonstrating to the court that the expert's rate and fee are reasonable."  *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 955 (N.D. Ill. 2012).   As another district court in the Fourth Circuit has held, "[c]ourts must be on guard against exorbitant expert fees, and retain the ultimate responsibility to keep litigation costs from becoming unreasonable."  *Massasoit v. Carter*, 227 F.R.D. 264, 267 (M.D.N.C. 2005). Indeed, "[t]he Court has a duty to do more than merely determine what the traffic will bear.

---

[34] *See* Aug. 11, 2010 expense by A. Foster for "alcohol purchased for Alpha Tire party."
[35] *See* Expense Analysis, entries for Jan. 31, 2010, May 24, 2010, June 25, 2010, July 6, 2010, July 12, 2010, and July 22, 2010.

Rather, it must determine reasonable fees." *Id.* at 267 n.4.  Thus, courts have held that an

attorney's request for reimbursement for "expert fees and expenses is measured by the same

'reasonableness and necessity' test as is used to determine counsel fees."  *In re Fleet/Norstar*

*Sec. Litig.*, 974 F. Supp. 155, 157 (D.R.I. 1997).

Gilbert previously recognized that the Nelson Fees were excessive when it sought to

recover some of those fees for, rather than from, Fishman on page 14 of its Reasonable Fee

Motion.  There, Gilbert sought only $931,154 for the Nelson Fees, explaining that "[j]ust as they

did with their own bills, Plaintiffs' counsel have reviewed Dr. Nelson's bills and eliminated time

spent preparing lost profit analyses that were not used, preparing trial exhibits, and other

minimally substantive tasks."  *Id.*  This reduction was appropriate, as reimbursement is not

warranted for "an expert charging fees for investigation of a 'blind alley,' which provided no

benefit to the class whatsoever."  *In re Fleet/Norstar Sec. Litig.*, 974 F. Supp. at 158.

Gilbert inappropriately also seeks a reimbursement of $253,173 for 612.5 hours of data

entry performed at rates between $375-$675 per hour.[36]  A reduction is appropriate where, as

here, the "record … reveals several instances of excessive use of high-level, high-cost expert

personnel, where lower-level and lower-cost personnel would have been able to accomplish the

same result."  *In re Fleet/Norstar Sec. Litig.*, 974 F. Supp. at 158.  Here, Gilbert seeks hundreds

of thousands of dollars for typing information from documents the defendants produced into

Excel spreadsheets.  Such administrative tasks should have been delegated to non-billing staff.

Further reductions also are warranted because the rates used to calculate the Nelson Fees

are excessive.  Phil Nelson charged $850 per hour. His assistant Kent Mikkelsen and other senior

staff charged $615 to $675 per hour, and their support staff charged between $375 and $425 per

---

[36] *See* Exhibit 15, a set of original invoices for the Nelson Fees highlighted to identify the
excessive charges for data entry.

hour.  These rates exceed the rates that courts have approved for damages experts in similar

cases.  *See, e.g., Nordock Inc. v. Sys. Inc.*, 927 F. Supp. 2d 577, 584 (E.D. Wis. 2013)

(determining $475 per hour to be a reasonable rate for a damages expert in a patent and

trademark case); *Se-Kure Controls, Inc.*, 873 F. Supp. 2d at 955 ($405 per hour); *Profile Prods.,*

*LLC v. Soil Mgmt. Techs., Inc.*, 155 F. Supp. 2d 880, 887 (N.D. Ill. 2001) (holding that "it is hard

to believe that … the time of a forensic accountant in Chicago is worth $475 an hour on a simple

contract case" and "[t]he defendants suggest a figure of $250 an hour, which seems reasonable");

*In re Bausch & Lomb*, 183 F.R.D. at 89-90 (reducing, in a 1998 complex securities case, fees

sought for a forensic accountant, an economist, and forensic economists who charged,

respectively, $350, $300, and $400 per hour).[37]

Fishman seeks a reduction to conform the rates used to calculate the Nelson Fees to rates

more in line with those found to be reasonable in similar cases.  Specifically, this Court should

reduce the hourly rates charged by Phil Nelson, his senior staff, and his junior staff to $500,

$350, and $200, respectively.  Additionally, both the number of hours and number of people

employed were excessive, and most of the time descriptions are inadequate.  Gilbert itself

previously acknowledged that a reduction is appropriate because substantial time was devoted to

a lost profit analysis that was never used to benefit Fishman.  Fishman therefore asks this Court

to apply the above reduced rates to the non-data entry hours billed, decreased by 40 percent to

address these deficiencies, and thus to adopt the following expert expense calculation:

---

[37] Although these rates are from other jurisdictions, courts have nevertheless noted that such cross-jurisdiction comparisons are more appropriate with respect to experts than attorneys because experts are not subject to the same territorial limitations.  *See Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 at n.3 (S.D. Iowa 1992) (holding that  "for obvious reasons, the 'community' would be much broader for expert witnesses than for attorneys").

| Timekeeper | Original Hourly Rate | Adjusted Hourly Rate | Original Non-Data Entry Hours | Adjusted Non-Data Entry Hours | Adjusted Fee Total |
|---|---|---|---|---|---|
| P. Nelson | $840 | $500 | 368.4 | 221.04 | $110,520.00 |
| K. Mikkelsen | $675 | $350 | 468.9 | 281.34 | $98,469.00 |
| G. Mosteller | $615 | $350 | 40.3 | 24.18 | $8,463.00 |
| S. Sun | $615 | $350 | 137.9 | 82.74 | $28,959.00 |
| T. Varner | $615 | $350 | 60.3 | 36.18 | $12,663.00 |
| L. Fowdur | $615 | $350 | 1.0 | 0.60 | $210.00 |
| Z. Schiffenbauer | $475 | $200 | 20.0 | 12.00 | $2,400.00 |
| E. McKinney | $425 | $200 | 296.4 | 177.84 | $35,568.00 |
| C. Lynagh | $375 | $200 | 90.4 | 54.24 | $10,848.00 |
| H. Lutjens | $375 | $200 | 59.6 | 35.76 | $7,152.00 |
| J. Miller | $375 | $200 | 11.2 | 6.72 | $1,344.00 |
| K. Lowe | $375 | $200 | 210.5 | 126.30 | $25,260.00 |
| R. Shepherd | $375 | $200 | 140.1 | 84.06 | $16,812.00 |
| R. Tang | $375 | $200 | 86.0 | 51.60 | $10,320.00 |
| V. Federico | $375 | $200 | 43.4 | 26.04 | $5,208.00 |
| W. Qian | $375 | $200 | 32.1 | 19.26 | $3,852.00 |
| G. Kelly | $375 | $200 | 36.3 | 21.78 | $4,356.00 |
| | | **Totals:** | 2,102.8 | 1,261.68 | $382,404.00 |

Based on this analysis, Gilbert is entitled to reasonable expenses in this case of no more than $292,557.67 for reimbursable costs other than experts, $45,660 in expert fees for the services of technical expert Raymond Evans, and $382,404.00 for the Nelson Fees, for total expenses of approximately $720,621.67.

## CONCLUSION

For the foregoing reasons, Jordan Fishman and his companies, Tire Engineering & Distribution, LLC, Bearcat Tire A.R.L., and BCATCO A.R.L. respectfully request that this Court enter an order determining the value of the lien that Gilbert asserted in this case to be no more than $1,389,488.80 in attorney's fees and $720,621.67 in expenses for a total of $2,110,110.47, and holding that payment of such amounts will satisfy fully the lien that Gilbert has asserted in this case.

Dated: November 22, 2013                    Respectfully submitted,

                                            _____/s/_____
                                            William E. Copley
                                            Virginia Bar No. 43960
                                            August J. Matteis (admitted *pro hac vice*)
                                            WEISBROD MATTEIS & COPLEY PLLC
                                            Attorneys for Plaintiffs-Judgment Creditors
                                            1900 M Street, N.W., Suite 850
                                            Washington, D.C.  20036
                                            Telephone:     (202) 499-7901
                                            Facsimile:     (202) 478-1795
                                            wcopley@wmclaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, William E. Copley, certify that on November 22, 2013, I caused a true and accurate

copy of the foregoing Memorandum in Support of Plaintiff's Motion to Determine Value of

Gilbert LLP's lien for attorney's fees and costs to be delivered to the following interested party,

Gilbert LLP via electronic filing:

> Barry Ira Buchman
> GILBERT LLP
> 1100 New York Ave NW
> Suite 700
> Washington, DC 20005
> Email: buchmanb@gotofirm.com

In addition, I caused a true and accurate copy of the foregoing to be served by hand upon counsel

for Gilbert LLP at the following address:

> Allen Gardner
> LATHAM & WATKINS LLP
> 555 Eleventh Street NW, Suite 1000
> Washington, DC 20004

> _____/s/_____
> William E. Copley
> Virginia Bar No. 43960
> August J. Matteis (admitted pro hac vice)
> WEISBROD MATTEIS & COPLEY PLLC
> Attorneys for Plaintiffs
> 1900 M Street, N.W., Suite 850
> Washington, D.C. 20036
> Telephone: (202) 499-7901
> Facsimile: (202) 478-1795
> wcopley@wmclaw.com