### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

IN RE: OUTSIDEWALL TIRE      )
LITIGATION                   )    **Case No. 1:09-cv-1217**

### MEMORANDUM OPINION

At issue on remand from the Fourth Circuit in this copyright infringement and conversion

case is the proper *quantum meruit* analysis of the fee award to which plaintiffs' former counsel is

entitled and the proper contract analysis of the costs to which plaintiffs' former counsel is

entitled. The dispute is between (i) plaintiffs, who won a final and now-affirmed $26 million

judgment against various foreign corporations,[1] and (ii) Gilbert LLP (the "Gilbert Firm"),

plaintiffs' former counsel, over the value of the latter's lien for fees and expenses, filed pursuant

to Va. Code § 54.1-3932. This is, in essence, a fee dispute between a law firm and the firm's

former clients. It arises because post-judgment, but prior to the completion of the appeal, two

former Gilbert Firm attorneys who led the effort to win the judgment—August Matteis and

William Copley—left the Gilbert Firm to form their own law firm, Weisbrod, Matteis & Copley

PLLC ("WMC"). When this occurred, plaintiffs elected to discharge the Gilbert Firm as

plaintiffs' counsel and instead to retain WMC as plaintiffs' counsel. Thereafter, the Gilbert Firm,

based on its fee contract with plaintiffs and the work it had performed on the case, filed a lien in

this district for fees and expenses under Va. Code § 54.1-3932, claiming more than $4.5 million

in fees plus a share of the moneys received from the judgment collection efforts, and more than

$1.8 million in costs and expenses. Plaintiffs subsequently filed a motion to determine the value

---

[1] *See Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 298
(4th Cir. 2012).

of the Gilbert Firm's lien, and on September 29, 2014, a Memorandum Opinion and Order issued granting plaintiffs' motion inasmuch as the reasonable value of the Gilbert Firm's lien was determined to be $1,958,341.67—$1,237,720 in attorney's fees and $720,621.67 in costs. *In re Outsidewall Tire Litigation*, 52 F. Supp.3d 777, 795 (E.D. Va. 2014) ("*Outsidewall I*"). The Gilbert Firm appealed, and the Fourth Circuit vacated and remanded the fees and costs determination reflected in *Outsidewall I* on the grounds that it: (i) did not expressly apply the factors for *quantum meruit* fee awards set forth by the Supreme Court of Virginia in *County of Campbell v. Howard*, 112 S.E. 876, 885 (Va. 1922), and (ii) erroneously applied a *quantum meruit* analysis to the costs issue instead of enforcing a costs provision in the parties' contract. Thereafter, the parties, as directed, filed supplemental briefs to aid resolution of the matter on remand. As the matter has been fully briefed and argued orally, the matter is now ripe for disposition.

## I.[2]

Plaintiffs in the underlying case are (i) Jordan Fishman, a Florida citizen, and three companies he owns and controls, namely (ii) Tire Engineering and Distribution, LLC, a Florida Company, (iii) Bearcat Tire ARL LLC, also a Florida company, and (iv) Bcatco A.R.L., Inc., which is incorporated under the laws of the Jersey Channel Islands. During times relevant to this litigation, plaintiffs were in the business of designing, manufacturing, and selling highly specialized tires for use on underground mining vehicles.

There were two sets of defendants in the underlying litigation. The first set, collectively referred to as the "Al Dobowi defendants," comprises: (i) Al Dobowi Tyre Co. LLC, (ii) Al Dobowi Ltd, (iii) TyreX International, Ltd., and (iv) TyreX International Rubber Co., Ltd., all of

---

[2] The facts recited here are essentially the same as those recited in *Outsidewall I*, 52 F. Supp.3d at 780-83.

which were headquartered in the United Arab Emirates and owned by Surender Kandharia, a Dubai citizen. The second set of defendants, collectively referred to as the "Linglong defendants," comprises (i) Shandon Linglong Rubber Co., and (ii) Shandong Linglong Tire Co., Ltd., both of which were incorporated in China. At all relevant times, the Dobowi and Linglong defendants were engaged in the business of designing, manufacturing, and selling rubber tires, including underground mining tires.

By 2009, Jordan Fishman had become convinced that his head of sales had conspired with plaintiffs' competitors, the Al Dobowi and Linglong defendants, to steal plaintiffs' copyrighted underground mining tire blueprints and designs and then to sell knock-off copies of plaintiffs' tires around the world, thereby damaging plaintiffs. Accordingly, Fishman sought counsel to vindicate plaintiffs' rights, and on August 4, 2009, Fishman signed an Engagement Letter with the Gilbert Firm. This Engagement Letter, drafted by the Gilbert Firm, provides for two alternative fee arrangements, specifically as follows:

> (i) in the event that the Gilbert Firm represented plaintiffs through resolution of the dispute, the Engagement Letter provides that plaintiffs would pay the Gilbert Firm a contingency fee equal to 40% of the gross amount of any sum recovered, and plaintiffs would reimburse the Gilbert Firm for "all costs and expenses related to this matter from the gross amount received by it"; or

> (ii) in the event plaintiffs terminated the Gilbert Firm's representation of plaintiffs prior to the resolution of the dispute, the Engagement Letter includes a termination provision, which provides that the Gilbert Firm "will be entitled to a fee based upon the hours expended by the Firm on this representation at the hourly rates normally charged by the involved personnel for the type of work rendered" and that plaintiffs will reimburse the Gilbert Firm "for all out-of-pocket expenses and disbursements incurred by the Firm" in connection with the Gilbert Firm's representation of plaintiffs.[3]

---

[3] According to the Engagement Letter, "[s]uch costs and expenses may include photocopying charges, courier and overnight delivery charges, travel expenses (including mileage, parking, airfare, lodging, meals, translation services, security, and ground transportation), costs incurred in computerized research, litigation support services, filing fees, witness fees, and the costs of

Engagement Letter. From the date plaintiffs retained the Gilbert Firm until plaintiffs discharged the Gilbert Firm in or around October 2011, plaintiffs' case was handled chiefly by Matteis, as lead counsel, and by Copley. Other Gilbert Firm lawyers assisted Matteis and Copley, but played less substantial roles in the case.

On October 28, 2009, plaintiffs filed two complaints in this district, one against the Al Dobowi defendants and one against the Linglong defendants. After the two suits were promptly consolidated, the parties briefed and argued various threshold motions and then proceeded to conduct discovery. After completion of discovery, defendants sought summary judgment on all nine counts and succeeded on four counts. Plaintiffs then proceeded to trial on the remaining counts: (i) violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*, (ii) violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as to registered marks, (iii) violation of the Lanham Act as to unregistered marks, (iv) common law conversion, and (v) common law civil conspiracy.

During the six-day trial, the parties presented live and videotaped testimony from a number of witnesses, substantial documentary evidence, and competing expert testimony on the issues of infringement and damages. In the end, the jury returned a verdict in favor of plaintiffs, awarding plaintiffs $26 million in damages jointly and severally against all defendants. Defendants' post-verdict Rule 50 motion met with only limited success; the registered trademark claim was dismissed for lack of evidence and the claim based on all but two of the unregistered marks suffered the same fate. Defendants' new trial motion failed as the record clearly supported the remaining verdicts and dismissal of some claims did not undermine the jury's damages award because the measure of damages was the same for all counts. Also post-trial, plaintiffs sought

---

any consultants, experts, investigators, court reporters, or other third parties who [the Gilbert Firm] deem[s] necessary." Engagement Letter.

and obtained a $632,377.50 attorney's fee award against Al Dobowi defendants on the ground that the Al Dobowi defendants' malicious, willful, and deliberate infringing conduct made this an "exceptional" case warranting a fee award pursuant to the Lanham Act's fee shifting provision, 15 U.S.C. § 1117(a). *See In re Outsidewall Tire Litigation*, 748 F. Supp.2d 557, 563 (E.D. Va. 2010).

Defendants appealed and on June 6, 2012, the Fourth Circuit reversed the remaining trademark and conspiracy verdicts, but nonetheless upheld the $26 million judgment against defendants based on the jury's verdicts on the conversion and copyright violation claims. *See Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 298 (4th Cir. 2012). The Fourth Circuit also vacated the fee award because the trademark claims were the sole bases for that award. *Id.*

Prior to the December 2011 oral argument before the Fourth Circuit panel, attorneys Matteis and Copley, in October 2011, elected to leave the Gilbert Firm and establish their own law firm, WMC. Both firms offered to continue representing plaintiffs. After consulting with both firms, plaintiffs elected to stay with Matteis and Copley, and accordingly, discharged the Gilbert Firm and retained WMC to represent plaintiffs in this case. Shortly thereafter, in January 2012, the Gilbert Firm filed a Notice of Former Counsel's Lien pursuant to Va. Code § 54.1-3932.

Once the $26 million judgment against defendants became final and defendants declined to pay, WMC, on plaintiffs' behalf, commenced a vigorous and wide-ranging collection effort. This effort included initiating lawsuits to compel banks to turn over defendants' assets in the banks' possession[4] and proceedings to enforce subpoenas and garnishments in courts across the

---

[4] *See, e.g., Tire Eng'g & Distrib. LLC v. Bank of China*, 740 F.3d 108 (2d Cir. 2014).

country.[5] These collection efforts led to an agreement by the Linglong defendants to pay plaintiffs $15.5 million to settle and resolve the Linglong defendants' liability in this case.

Thereafter, plaintiffs filed a motion to determine the value of the Gilbert Firm's lien. The Gilbert Firm sought to recover its expenses, but it did not seek its contingency fee, conceding that the provision authorizing the contingent fee was not enforceable under Virginia law, and therefore the Gilbert Firm could recover only the value of its services in *quantum meruit*. Arguing that its significant contribution to plaintiffs' success in the litigation merited a substantial fee award, the Gilbert Firm sought $4.5 million in hourly fees, $1.8 million in costs, and a portion of the contingency fee.

By Order and Memorandum Opinion dated September 29, 2014, plaintiffs' motion to determine the value of the Gilbert Firm's lien was granted inasmuch as the reasonable value of the Gilbert Firm's lien was determined to be $1,958,341.67—$1,237,720 in attorney's fees and $720,621.67 in costs. *Outsidewall I*, 52 F. Supp.3d at 795. With respect to attorney's fees, *Outsidewall I* employed a lodestar analysis and *quantum meruit* principles to determine the value of the Gilbert Firm's lien, concluding that the Gilbert Firm's rates were unreasonably high and that the Gilbert Firm's demand for 10,955 hours was excessive. *Id.* 787-93. With respect to costs, *Outsidewall I* employed a reasonableness analysis, concluding that some of the costs sought were excessive or otherwise inappropriate. *Id.* at 793-95.

Thereafter, the Gilbert Firm appealed, and on January 11, 2016, the Fourth Circuit issued an unpublished Memorandum Opinion vacating and remanding the district court judgment on the

---

[5] The garnishment actions pursued by WMC on plaintiffs' behalf include, *inter alia*, the following: *In re Outsidewall Tire Litig.*, 2:13–mc–00315 (C.D. Cal.) (against Horizon Tire Inc.); *In re Outsidewall Tire Litig.*, 13 MC 249, (D. Ore.) (against Icon Tire Co.); *In re Outsidewall Tire Litig.*, 3:13–mc–00088 (N.D. Tex.) (against Maffeo Tire Group LLC). For the complete list of these actions, see *Outsidewall I*, 52 F. Supp.3d at 782 n.3.

grounds that *Outsidewall I* (i) did not expressly apply the factors for *quantum meruit* fee awards set forth by the Supreme Court of Virginia in *County of Campbell*, 112 S.E. at 885, and (ii) erroneously applied a *quantum meruit* analysis to the costs issue instead of enforcing the costs provision in the parties' Engagement Letter. *In re Outsidewall Tire Litigation*, No. 14-2192, 2016 WL 106276, at *3-5 (4th Cir. Jan. 11, 2016) (unpublished). Thereafter, the mandate issued, and the parties were expressly instructed by Order "to submit supplemental briefs that apply the legal tests elucidated by the Fourth Circuit"; the parties were neither directed nor permitted to submit additional factual material. *In re Outsidewall Tire Litigation*, 1:09cv1217 (E.D. Va. Feb. 10, 2016) (Order) (Doc. 642). It remains, therefore, to apply the *County of Campbell* factors to determine the appropriate *quantum meruit* fee award and to apply the Engagement Letter's costs provision to determine the appropriate amount in costs to which the Gilbert Firm is entitled.

In the fee claim at issue in *Outsidewall I*, the Gilbert Firm claimed that its lawyers spent 10,955 hours on the case at hourly rates ranging from $375/hour to $900/hour, for a total of $4,542,228.50. Now, on remand, it is important to note that the Gilbert Firm does not seek all of the 10,955 hours originally claimed, but instead seeks 4,192 hours fewer than that figure. Thus, the Gilbert Firm seeks on remand to recover attorney's fees for 6,763 hours at the same hourly rates, for a total of $3,118,595. With respect to costs, the Gilbert Firm claimed in *Outsidewall I* that it was entitled to $1,812,149.20 in costs. Yet, on remand, the Gilbert Firm excludes $71,836.30 of the costs originally claimed, and therefore now seeks $1,740,312.90 in costs.

## II.

As the Fourth Circuit made clear in its unpublished January 11, 2016 opinion, "[t]he parties agree that Virginia law governs the Gilbert Firm's recovery from its former client, and that Virginia law prohibits the Gilbert Firm from enforcing its contingency fee agreement with

[plaintiffs]." *In re Outsidewall Tire Litigation*, 2016 WL 106276, at *2. The Fourth Circuit further elucidated the governing law by noting that "[u]nder Virginia law, 'when, as here, an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon *quantum meruit*' for the work performed before the attorney was terminated." *Id.* at *2 (quoting *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282, 285 (Va. 1977)). The Supreme Court of Virginia has defined *quantum meruit* as "the reasonable value of the services rendered." *Heinzman*, 234 S.E.2d at 286, n.4. As the Fourth Circuit further noted, the Supreme Court of Virginia in *County of Campbell* set forth the following factors for a court to consider when awarding attorney's fees in *quantum meruit*:

    (i) "the amount and character of the services rendered";

    (ii) "the responsibility imposed";

    (iii) "the labor, time, and trouble involved";

    (iv) the character and importance of the matter in which the services are rendered";

    (v) "the amount of the money or the value of the property to be affected";

    (vi) "the professional skill and experience called for";

    (vii) "the character and standing in their profession of the attorneys";

    (viii) "whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so"; and

    (ix) "[t]he result secured by the services of the attorney."

112 S.E. at 885. Importantly, when applying these factors to determine the *quantum meruit* value of a fee award for the services rendered, "the measure of compensation is the value of the work done [by the lawyer], not the benefit derived by the [client] from it." *Id.* at 884-85.

The Fourth Circuit held that the attorney's fee determination recorded in *Outsidewall I* was erroneous because even though it referred to the *County of Campbell* factors in connection with a *quantum meruit* lodestar analysis, *Outsidewall I* did not expressly analyze the *County of Campbell* factors when determining the fee award. Instead, as the Fourth Circuit noted, *Outsidewall I* "calculated a lodestar figure and ended its analysis there." *In re Outsidewall Tire Litigation*, 2016 WL 106276, at *3. In other words, the Fourth Circuit held that although it is appropriate to apply the lodestar methodology in the context of a *quantum meruit* fee award,[6] the *County of Campbell* factors must be expressly analyzed within the lodestar methodology. The Fourth Circuit explained that "a district court need not recite and make express findings for each and every [*County of Campbell*] factor," but a district court must analyze "relevant factors in detail." *Id.* at *3. In particular, the Fourth Circuit emphasized that two *County of Campbell* factors—the "contingent nature" of the fee arrangement and the $26 million "result secured"— are central to the *quantum meruit* analysis in this case. *Id.* Thus, with respect to attorney's fees on remand, the only question is whether the express application of the *County of Campbell* factors to the existing fee claim leads to a result different from the result reached in *Outsidewall I*, which was based only on a lodestar analysis of the Gilbert Firm's fee claim.

Accordingly, it is appropriate to consider expressly the *County of Campbell* factors in connection with the lodestar methodology. In this respect, *County of Campbell* factors (ii), (vi), (vii), and (viii) relate directly to the appropriate rates that should be paid to discharged counsel,

---

[6] As another district court has noted, "*County of Campbell* essentially provides for what has become known as a 'lodestar' fee[,] … which usually equals the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Morris Law Office, P.C. v. Tatum*, 388 F. Supp.2d 689, 715 (W.D. Va. 2005); *see also Braude & Margulies, PC v. Pierce Assocs., Inc.*, No. 88-2523, 1989 WL 14258, at *4 (4th Cir. 1989) (upholding a district court's discretion in applying the *County of Campbell* factors and basing the fee award on an hourly rate multiplied by hours worked).

and factors (i), (iii), (iv), (v), and (ix) relate to the number of hours worked on the matter. In determining the appropriate *quantum meruit* award within the lodestar framework, each set of *County of Campbell* factors is expressly analyzed separately below.

## A.

A useful starting point in the lodestar analysis is the reasonableness of the hourly rates claimed in the fee claim in light of the *County of Campbell* factors. Here, the claimed hourly rates for various Gilbert Firm attorneys range from $375/hour to $900/hour. These are essentially the same rates that were previously submitted—and rejected as excessive—in the trademark fee petition. *See Outsidewall Tire*, 748 F. Supp.2d at 568-69. In addition, the rates that the Gilbert Firm seeks here on remand are the same rates that the Gilbert Firm sought in the fee claim at issue in *Outsidewall I*. The conclusion reached there was that courts in this district have recognized, in the fee-shifting context, rates up to $420/hour for partners and $250/hour to $300/hour for associates as "reasonable and appropriate for cases similar in nature, difficulty, and complexity" in Northern Virginia. *Outsidewall I*, 52 F. Supp.3d at 788.[7] Accordingly, *Outsidewall I* reduced the Gilbert Firm's rates to $400/hour for partners, $350/hour for counsel, and $275/hour for associates. *Id*. Importantly, however, the Fourth Circuit made clear that "this is not a fee-shifting" dispute and that "under [the] *County of Campbell*" factors, "when a litigant *selects* a firm with higher rates, that firm may be entitled to a larger fee in *quantum meruit*" than

---

[7] *See, e.g., Jones v. Southpeak Interactive Corp. of Delaware*, No. 3:12cv443, 2014 WL 2992443, at *7 (E.D. Va. July 1, 2014) (reasonable rate for experienced counsel was $420/hour); *Auto. Fin. Corp. v. EEE Auto Sales, Inc.*, No. 1:10CV1407, 2011 WL 3422648, at *8 (E.D. Va. Aug. 3, 2011) (reasonable market rates in Northern Virginia were $335-380/hour for partners and $250/hour for associates); *Lake Wright Hosp., LLC v. Holiday Hosp. Franchising, Inc.*, No. 2:07cv530, 2009 WL 4841017, at *7 (E.D. Va. Oct. 23, 2009) (rate of $350/hour was reasonable and appropriate for a law firm partner with 15 years' experience); *Alford v. Martin & Gass, Inc.*, No. 1:08cv595, 2009 WL 2447936, at *5 (E.D. Va. Aug. 3, 2009) ($350/hour was reasonable rate for experienced counsel).

10

would be appropriate in the fee-shifting context. *In re Outsidewall Tire Litigation*, 2016 WL 106276, at *4 n.4 (emphasis in original). Thus, in order to determine whether the hourly rates sought by the Gilbert Firm are appropriate for a *quantum meruit* fee award, it is appropriate to consider each of the *County of Campbell* factors relevant to hourly rates, namely: (ii) "the responsibility imposed"; (vi) "the professional skill and experience called for"; (vii) "the character and standing in their profession of the attorneys"; and (viii) "whether or not the fee is absolute or contingent."

Factors (ii) and (vi) measure the level of experience, skill, and commitment required to carry out the representation at issue. This matter involved a copyright claim that was litigated through trial, appeals, and collections. In this regard, the reasonable rates awarded to attorneys in Northern Virginia in the fee-shifting context are instructive—although not dispositive—as those rates are grounded in considerations of the attorneys' experience, skill, and commitment. Thus, in light of *County of Campbell* factors (ii) and (vi), the rates applied in *Outsidewall I*—$400/hour for partners, $350/hour for counsel, and $275/hour for associates—are an appropriate starting place. It remains to be determined whether the remaining *County of Campbell* factors relevant to determining an appropriate *quantum meruit* fee award point toward higher or lower hourly rates.

Factor (vii) addresses the character and standing of the Gilbert Firm attorneys in their profession. The October 28, 2010 Memorandum Opinion, which addressed the trademark fee petition, expressly considered the character and standing of the Gilbert Firm attorneys in their profession:

> [P]laintiffs point to the qualifications of their attorneys as a critical factor in their success. Undoubtedly, plaintiffs' counsel brought the necessary skills and experience to bear on this litigation, but these skills are consistent with what one would expect from seasoned litigators of similar age and experience in this area. This group typically charges no more than $400 for this type of work.

*Outsidewall Tire*, 748 F. Supp.2d at 568.[8] Importantly, the Gilbert Firm has offered no additional proof that its attorneys have standing in their profession that would justify rates higher than the rates charged by similarly situated attorneys in Northern Virginia. On appeal, the Gilbert Firm argued that *Outsidewall I* erred by awarding Virginia rates rather than Washington, D.C. rates, but the Fourth Circuit expressly left this issue to the discretion of the district court. *In re Outsidewall Tire Litigation*, 2016 WL 106276, at *4 n.4. Moreover, the Fourth Circuit has consistently held in other cases that Washington, D.C. rates are not "a reliable indicator of the hourly rates of litigation attorneys in [Alexandria], Virginia." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 245 (4th Cir. 2009) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008)). Thus, the fact that the Gilbert Firm charges Washington, D.C. rates is not evidence that Gilbert Firm attorneys are of higher character and standing than similarly situated Northern Virginia attorneys. Accordingly, this factor does not result in an increase to the hourly rate here.

Finally, consideration of factor (viii)—whether or not the fee is absolute or contingent— does not result in an increase to the hourly rates to be applied in this case. As the Fourth Circuit made clear in this case, the Supreme Court of Virginia explained that it is a " 'recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so.' " *In re Outsidewall Tire Litigation*, 2016 WL 106276, at *3 (quoting *County of Campbell*, 112 S.E. at 885). Indeed, to conclude otherwise would discourage attorneys from

---

[8] With respect to the trademark fee petition, the Gilbert Firm contends that because plaintiffs' lawyer, Matteis, then a Gilbert Firm attorney, argued that certain hourly rates were reasonable when he submitted the trademark fee petition, plaintiffs should now be bound by these arguments on the ground that they constitute judicial admissions. This argument fails not only because Matteis's arguments were rejected at the trademark fee petition stage, but also because these arguments related to *legal* conclusions, and therefore cannot constitute judicial admissions, which are clear statements of *fact*. *See New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) (holding that judicial admissions "go to matters of fact" and that "[t]he doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case").

taking on contingency cases in the first place, as these cases require firms to invest time and money with no guarantee of ultimate recovery. *See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245-46 (4th Cir. 2010) (noting that "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation"). The Gilbert Firm contends that in light of this *County of Campbell* factor, it is appropriate to multiply the lodestar figure by two or three in order to account for the contingent nature of the Gilbert Firm's original representation of plaintiffs. Yet, as plaintiffs correctly note, such an enhancement is inappropriate here for several reasons.

To begin with, most of the cases cited by the Gilbert Firm in support of its argument that the lodestar figure should be multiplied by two or three are inapposite, as those cases do not involve a law firm terminated prior to actual recovery seeking an enhancement of a fee award based on *quantum meruit* under Virginia law.[9] The only case cited by the Gilbert Firm that involves such a law firm is *Kidd v. CSX Transp.*, No. 89-0899, 1990 WL 518125 (W.D. Va. 1990). There, a district court applying *quantum meruit* under Virginia law in a fee determination involving a terminated law firm awarded fees for each attorney at the rate of $125/hour and also divided the remainder of a 25% contingency fee on a $600,000 settlement between the discharged firm and successor firm because the plaintiff had entered a contingency fee arrangement with both firms. *Id.* at *3. Importantly, however, the district court in *Kidd* divided the contingency fee among the two law firms only because the district court concluded that to do

---

[9] Specifically, some of the cases cited are inapposite as they are class-action common-fund cases in which the law firm seeking a fee award actually recovered the money in the fund at issue to the benefit of the client. *See In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp.2d 778, 788 (E.D. Va. 2001) (noting that the purpose of including a multiplier in a common-fund fee award is "to reward lead counsel for the favorable result achieved for the class"); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (noting that "Lead Counsel and Lead Plaintiffs are entitled to compensation and reimbursement for their efforts in ascertaining a benefit for the Class in this case").

otherwise would "leave a windfall with the plaintiffs, who anticipated that 25% of any settlement they received would be used for attorney's fees." *Id.*

Here, by contrast, plaintiffs would not benefit from a windfall in the absence of an enhancement to the Gilbert Firm's fee award because unlike in *Kidd*, plaintiffs' agreement with the Gilbert Firm—the Engagement Letter—not only included a provision for a contingency fee, but also made clear that in the event plaintiffs terminated the Gilbert Firm's representation, the Gilbert Firm would be paid according to an hourly rate. Specifically, the parties entered an agreement according to which the Gilbert Firm would be paid as follows:

> (i) in the event that the Gilbert Firm's representation was not terminated before the resolution of the dispute, on a contingency fee basis, or
>
> (ii) in the event that the Gilbert Firm's representation was terminated prior to the resolution of the dispute, on a fixed hourly basis according to "the hourly rates normally charged by the involved personnel for the type of work rendered."

Engagement Letter. Although the parties' Engagement Letter is not enforceable here, it points persuasively to the conclusion that plaintiffs and the Gilbert Firm knew from the outset that if plaintiffs terminated the Gilbert Firm's representation prior to completion of litigation—which in fact occurred—the Gilbert Firm would be entitled, under the terms of the Engagement Letter, *only* to an absolute fee based on the hours expended.

Moreover, the fact that plaintiffs *chose* the Gilbert Firm, as distinct from parties in fee-shifting cases who do not choose the opposing counsel whose fees they ultimately must pay, does not support a conclusion that the Gilbert Firm is entitled to the excessive hourly rates it now seeks. This is so because the Engagement Letter failed to disclose to plaintiffs the rates the Gilbert Firm now seeks, or even *any* hourly rates for any Gilbert Firm attorneys who might work on the case. Thus, plaintiffs had no notice—nor any other reason to believe—that they had selected a law firm that charges rates higher than the rates charged by similarly situated attorneys

in Northern Virginia of a similar level of experience, skill, and commitment required to carry out the representation at issue. Indeed, the record provides no basis for concluding that plaintiffs understood that they had chosen a law firm that would charge rates as high as $900/hour. Thus, there is no sound legal basis for enhancing the Gilbert Firm's fee award to account for the contingent fee arrangement because the parties anticipated that in the event the Gilbert Firm was terminated prior to completion of litigation, the Gilbert Firm would be entitled only to an hourly rate, and because plaintiffs had no reason to believe that the hourly rates ultimately charged by the Gilbert Firm would be higher than the rates charged by similarly situated attorneys.

In sum, for purposes of determining the lodestar amount in light of the relevant *County of Campbell* factors, the rates applied in *Outsidewall I* are properly applied here: $400/hour for partners, $350/hour for counsel, and $275/hour for associates. These rates are fully consistent with the *County of Campbell* factors.

**B.**

The next step in the lodestar analysis is to examine the fee claim to determine the appropriate number of attorney hours to multiply by the hourly rates. *Outsidewall I* concluded that a careful review of the 10,955 hours billed by the Gilbert Firm revealed that the number of hours sought was excessive and that the time entries were "rife with flawed entries that make its record inadequate and unreliable." *Outsidewall I*, 52 F. Supp.3d at 788. As a result, the number of hours was reduced to 3,834.25 for lodestar purposes. As already noted, on remand, the Gilbert Firm does not seek compensation for the full 10,955 hours included in the original fee claim, but seeks instead compensation for 6,763 of these hours, which still far exceeds the 3,834.25 hours previously awarded in *Outsidewall I*.

Importantly, however, it is impossible to tell precisely which of the 10,955 hours the Gilbert Firm has removed from the fee claim in arriving at the 6,763 hours it now seeks. Indeed, the Gilbert Firm merely asserts that it has excluded some general categories of time entries from the original fee claim.[10] Moreover, as plaintiffs correctly point out, contrary to the Gilbert Firm's contention, it is neither necessary nor appropriate to reopen the factual record on remand because (i) the Fourth Circuit remanded the present case expressly for the purpose of applying the *County of Campbell* factors to the factual record already submitted in support of the Gilbert Firm's fee claim, and (ii) the Order directing the parties to submit supplemental briefs expressly instructed the parties "to submit supplemental briefs that apply the legal tests elucidated by the Fourth Circuit," and did not direct or permit the parties to submit additional factual material. *In re Outsidewall Tire Litigation*, 1:09cv1217 (E.D. Va. Feb. 10, 2016) (Order) (Doc. 642).[11] Thus, as

---

[10] Specifically, the Gilbert Firm asserts that it has excluded all time entries that plaintiffs have challenged in prior submissions as excessive, duplicative, or otherwise inappropriate, including, *inter alia*: (i) document review by attorneys and legal assistants; (ii) training and observation opportunities; (iii) any tasks performed by legal assistants; (iv) firm management tasks, and (v) other overhead functions.

[11] If the Gilbert Firm were allowed to reopen the factual record without permission, an additional unfairness would result. Specifically, the Order directing the parties to submit supplemental briefs instructed plaintiffs to submit a brief by a date prior to when the Gilbert Firm's responsive supplemental brief was due. *In re Outsidewall Tire Litigation*, 1:09cv1217 (E.D. Va. Feb. 10, 2016) (Order) (Doc. 642). In plaintiffs' supplemental brief, plaintiffs, as instructed, applied the tests elucidated by the Fourth Circuit to the existing factual record. But in the Gilbert Firm's responsive supplemental brief, the Gilbert Firm attempted to reopen the factual record and to omit certain categories of time entries. As a result, plaintiffs did not have an adequate opportunity to analyze which of the 10,955 hours the Gilbert Firm seeks to exclude. In contrast, with respect to the original 10,955 hours sought by the Gilbert Firm, plaintiffs had an adequate opportunity to review each of the 4,648 time entries originally submitted by the Gilbert Firm, and as a result, plaintiffs submitted a Fee Analysis, which identified with specificity each of the time entries to which plaintiffs objected. *See* Mem. in Support of Pls.' Motion to Determine Value of the Gilbert Firm's Lien for Attorney's Fees and Costs, Ex. 8, Fee Analysis. To accept the Gilbert Firm's assertion that it has omitted all disputed time entries on remand—and to proceed with the analysis on the new amount of hours sought—would be unfair to plaintiffs, who have not had an opportunity to analyze line-by-line each of the time entries that Gilbert now

already noted, the only question to be resolved on remand with respect to attorney's fees is whether express application of the *County of Campbell* factors to the existing fee claim leads to a result different from the conclusion reached in *Outsidewall I.* With respect to this question, the relevant *County of Campbell* factors must be applied to all of the 10,955 hours included in the Gilbert Firm's fee claim, even though the Gilbert Firm no longer seeks all of these hours. This is so because it is impossible to determine precisely which of the specific hours in the 10,955 hours originally claimed the Gilbert Firm no longer seeks and because the Gilbert Firm was neither directed nor permitted to reopen the factual basis for the fee award on remand.

The relevant *County of Campbell* factors to be applied to the number hours are as follows: (i) "the amount and character of the services rendered"; (iii) "the labor, time, and trouble involved"; (iv) "the character and importance of the matter in which the services are rendered"; (v) "the amount of money or the value of the property to be affected"; and (ix) "[t]he result secured." *County of Campbell*, 112 S.E. at 885.

*County of Campbell* factors (i) and (iii) require consideration of the amount and quality of the services rendered. Close examination of the Gilbert Firm's time entries reveals that flaws in the Gilbert Firm's time entries prevent a fair and confident assessment of the amount and quality of services rendered by the Gilbert Firm. These flawed entries include, for example: (i) entries that lump numerous tasks together for one time entry, (ii) entries that contain excessively vague and inadequate task descriptions, (iii) entries that claim legal fees for travel time, (iv) entries that claim time for multiple attorneys doing the same tasks when a single or fewer attorneys would have sufficed, (v) entries for time devoted to claims that ultimately did not succeed, (vi) entries

seeks. Moreover, reopening the factual record to allow plaintiffs to contest specific time entries is unnecessary and would be inefficient, as the plaintiffs have already provided sufficient materials with respect to the original 10,955 hours sought by the Gilbert Firm.

17

that report time for law students temporarily employed for the summer, and (vii) entries that report time spent on other matters.[12] The many flaws in the time entries effectively preclude any confident assessment of the amount, quality, and character of the tasks for which fees are claimed. Indeed, many entries describe a task in such vague or general terms as to frustrate any attempt to assess the character or nature of the task, and thus to determine whether the time claimed for that task is appropriate for the quality of the services rendered. Examples of this type of flaw include numerous entries that describe a task simply as "document review" or "work on discovery" or "review electronically stored litigation." Mem. in Support of Pls.' Motion to Determine Value of the Gilbert Firm's Lien for Attorney's Fees and Costs, Ex. 8, Fee Analysis (various entries). These and other vague task descriptions that do not disclose the nature, volume, or relevance of the documents prevent any accurate or confident assessment of the first and third *County of Campbell* factors. The absence of detailed documentation precludes a court, as well as opposing counsel, from making a "fair evaluation of the time expended ... [and] the nature and need for the service." *Uzzell v. Friday*, 618 F. Supp. 1222, 1226 (M.D. N.C. 1985) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983)).[13]

The same barrier to determining the character and nature of the work included in the time entries exists with respect to entries that lump multiple tasks together under a single time entry, a practice known as "lumping." As one court put it, "lumping" is the grouping of "several tasks together under a single entry, without specifying the amount of time spent on each particular

---

[12] *See, e.g.*, Mem. in Support of Pls.' Motion to Determine Value of the Gilbert Firm's Lien for Attorney's Fees and Costs, Ex. 8 (entries by K. Hale on Oct. 6, 2009, April 14, 2010, June 8, 2010, and August 18, 2010; three entries by D. Sugimura on May 6, 2010; entry by L. Martinez on November 1, 2010).

[13] Although *Uzzell* was a fee-shifting case, the principle that a lack of detailed documentation precludes fair and confident review of the hours claimed applies to any fee award determination, including a *quantum meruit* fee award determination.

18

task" such that a court is not provided "with a sufficient breakdown to meet [the] burden to support [a] fee request." *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp.2d 704, 716 (E.D. Va. 2012) (internal quotation marks and citations omitted).[14] Examples of this type of flawed entry include (i) "[d]iscovery issues; prepare for argument"; (ii) "attend pretrial conference, file deposition counter designations, prepare evidentiary outline"; and (iii) "[prepare] facts for Fishman direct examination and jury instructions, [prepare] objections to defendants' depositions designations, review and analyze defendants' motions in limine[,] and conferences with A. Matteis ... ." Fee Analysis (various entries). Importantly, these vague and lumped entries are not few or rare; the time entries supporting the Gilbert Firm's fee claim are replete with these and other flawed entries. Thus, for a large portion of the time entries submitted, it is impossible to assess with accuracy and confidence the amount and quality of the services rendered by the Gilbert Firm, as is required by *County of Campbell*.

Where, as here, time entries suffer from inadequate documentation, such as lumping and vague task descriptions, a court must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage. In other contexts, when "faced with excessively vague or inadequate task descriptions in fee claims," courts "have reduced fee claims by percentages ranging from 20% to 90%." *Route Triple Seven*, No. 1:14-cv-30, 2015 WL 5123302, at *11.[15] And "courts confronted with time records infected

---

[14] Again, although *Project Vote* is a fee-shifting case, as are the majority of cases involving fee award determinations, the principle that lumping precludes fair assessment of time entries applies equally in the *quantum meruit* context.

[15] *See, e.g., Bishop v. Colvin,* No. RDB-13-519, 2014 WL 2093950, at *3 (D. Md. 2014) ("Because of the imprecise tracking of hours and tasks throughout the itemized statement of fees ... I recommend reducing the total hours allowed by twenty percent."); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Justice,* 825 F. Supp.2d 226, 230 (D. D.C. 2011) (reducing the hours claimed by 37.5% to account for "inaccuracies and overbilling

with lumping have reduced fee claims by percentages ranging from 10% to 20%." *Id.*[16] In sum, as noted in *Outsidewall I*, "where, as here, time records included lumping and vague task description flaws and it is impractical to review over 4000 entries to attempt to ascertain precisely how many hours to deduct to account for these flaws," a court "must make a judgment based on knowledge of the case and litigation generally in reducing the relevant number of hours forming the basis for a fee award." 52 F. Supp.3d at 790. This is true regardless whether the fee award determination arises in the context of a fee-shifting analysis, or as it does here, in the context of a *quantum meruit* analysis. This is so because the principle that a lack of detailed documentation precludes fair and confident assessment of the quality of the services rendered is a principle applicable in both contexts. Thus, a careful review of the Gilbert Firm's time entries and thorough knowledge of this case compels the conclusion that a 55% reduction in the 10,955 hours claimed by the Gilbert Firm is appropriate to account for the flawed entries that impede a fair and confident assessment of the quality of the services rendered.[17]

---

that may have occurred as a result of ... unacceptable timekeeping habits"); *Local 32B–32J, Serv. Emp. Int'l Union, AFL–CIO, et al. v. Port Authority of N.Y. and N.J.,* 180 F.R.D. 251, 253 (S.D. N.Y. 1998) (finding that "the vague descriptions contained in many of the attorney time records" justified a "20% reduction in the amount" requested); *Amato v. City of Saratoga Springs,* 991 F. Supp. 62, 66 (N.D. N.Y. 1998) (reducing the number of hours claimed by 90% because of "grossly inadequate specificity in the proffered billing records" and an unreasonably high request for hours).

[16] *See, e.g., Elderberry of Weber City, LLC v. Living Centers–Southeast, Inc.,* No. 6:12-cv-00052, 2014 WL 3900389, at *4 (W.D. Va. 2014) ("When confronted with block billing, courts often reduce the fee award by a fixed percentage, striking a balance between the troubling lack of specificity block billing presents and the unfairness of denying an otherwise-properly-granted fee award altogether."); *Project Vote,* 887 F. Supp.2d at 716 (applying "a fixed percentage reduction of 10 percent to the fee award" due to lumping).

[17] It is worth noting that a 55% reduction to the 10,955 hours claimed in the original fee award results in 6,047.69 hours, which approximates the amount of hours that the Gilbert Firm seeks on remand, namely 6,763 hours. By no means, however, does the record reflect that the 4,192 hours the Gilbert Firm now seeks to exclude from the fee claim account for all of the flawed

In addition to the pervasive lumping and vagueness flaws, the Gilbert Firm's time entries also include a number of entries claiming travel time, but the time entries fail to demonstrate or record whether the traveling attorneys actually performed work for plaintiffs while traveling. Most of the entries simply reflect travel from one destination to another with no substantive descriptions of any work completed during the course of travel. In terms of *County of Campbell* factors (i) and (iii), these entries provide no basis for concluding that the time claimed involved services rendered that were legal in nature—or that any services were rendered at all. Indeed, on the basis of these time entries, there is no reason to infer that the traveling attorneys were working on this case while traveling rather than spending time in other ways, such as working on other cases, reading magazines, solving crosswords puzzle, or watching in-flight movies. It is thus necessary to reduce the number of hours further to account for these entries. Moreover, a reduction in travel time is particularly necessary here because many of the travel entries reflect travel to and from Dubai, resulting in a substantial number of hours claimed where the attorneys apparently did not do any actual work on behalf of plaintiffs. The Gilbert Firm's billing records also include entries that claim travel time for trips to Washington, D.C. for hearings, as well as travel to various depositions. Thus, because the time entries for travel time do not provide any basis for concluding that any legal services were rendered during travel, it is appropriate to reduce the Gilbert Firm's fee claim of 10,955 hours by an additional 2% to account for inadequately justified claims for attorney's fees during travel time.

documentation in the original fee claim. In other words, it appears that there are flawed entries both in the 6,763 hours the Gilbert Firm now seeks and in the 4,192 it now seeks to exclude from the fee claim. As already noted, because it is impractical, if not impossible, to determine which of the 10,995 hours the Gilbert Firm now seeks to exclude from the fee claim—and therefore impossible to determine how many flawed time entries remain—it is appropriate to use the original 10,955 hours claimed as a starting point for a reduction in hours.

21

Next, in light of *County of Campbell* factors (i) and (iii)—the amount and character of the services rendered and the labor, time, and trouble involved—it is appropriate to reduce the hours claimed by the Gilbert Firm to account for time entries that are excessive, redundant, or otherwise unnecessary, as these entries charge for unnecessary services, and therefore the character of these services does not warrant compensation under the principles of *quantum meruit*. The Gilbert Firm's records include time entries for multiple attorneys who merely attended hearings and depositions, presumably just to watch and observe. This practice is generally discouraged, especially in the Fourth Circuit, and billing time for three attorneys at every single hearing, including relatively minor motions and sanctions hearings, is unnecessary and inappropriate. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994) ("[W]e have also been sensitive to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney."). The burden is squarely on the Gilbert Firm to demonstrate the necessity of sending numerous attorneys to every single hearing, and this burden is not carried in the time entries submitted here that read simply "attend hearing." *See* Fee Analysis (various entries). Accordingly, a further reduction of 3% to the original 10,955 hours claimed is appropriate because mere attendance at hearings and depositions by attorneys is unnecessary, and therefore the character of these services does not warrant compensation under the principles of *quantum meruit*.

As part of the *quantum meruit* analysis, it is next appropriate to consider *County of Campbell* factors (iv), (v), and (ix)—the character and importance of the matter in which the services are rendered, the amount of money or the value of the property to be affected, and the result secured. With respect to the "result secured" factor, the Supreme Court of Virginia has explained that this factor must be analyzed "merely as bearing upon the consideration of the

efficiency with which they were rendered, and, in that way, not from the standpoint of their value to the client." *County of Campbell*, 112 S.E. at 885. Moreover, this factor is more relevant to a fee determination when the counsel seeking a fee award actually secures money for the client— as in *County of Campbell*—rather than where, as here, the clients' subsequent counsel, rather than the counsel seeking a fee award, actually undertook the arduous, time-consuming effort required to recover on the judgment. *See County of Campbell*, 112 S.E. at 881.

With respect to the result secured factor, the Gilbert Firm's litigation services related to an important matter involving a large sum of money; indeed, the dispute resulted in a $26 million judgment in favor of plaintiffs, although only a portion of that judgment has actually been recovered. Importantly, however, careful examination of the Gilbert Firm's time entries reflects that many of the hours claimed are excessive and unrelated to the Gilbert Firm's work in securing the $26 million judgment. To begin with, the number of hours claimed by the Gilbert Firm must be reduced because many time entries relate to claims that were ultimately unsuccessful on summary judgment;[18] thus, these entries reflect time unrelated to the copyright result secured, and thus cannot be viewed as time efficiently spent under a *quantum meruit* standard. *See County of Campbell*, 112 S.E. at 885. As this time was essentially and ultimately unproductive given the result, the claim for these entries must be discounted. Of course, if successful and unsuccessful claims or motions are closely related, then time spent on an unsuccessful claim or motion might still be justifiably counted in full. But it is difficult, if not impossible, on the basis of the documentation submitted to determine whether this occurred here. In light of this, and in light of the difficulty of assessing with precision the number of hours that

---

[18] Specifically, summary judgment was granted on a number of plaintiffs' claims, including misappropriation of trade secrets. In addition, the Gilbert Firm has submitted time entries related to plaintiffs' civil conspiracy claim, which was initially successful, but was then overturned by the Fourth Circuit. *See Tire Eng'g and Distrib., LLC*, 682 F.3d at 311.

23

are properly deducted as having been inefficiently spent on unsuccessful claims, it is necessary to make a judgment in this regard based on the court's (i) familiarity with this case and (ii) years of experience with litigation of this sort. Accordingly, the Gilbert Firm's claimed hours are appropriately reduced further by 4% to account for inefficient time spent on unsuccessful causes of action or motions.

Moreover, *County of Campbell* factors (iv), (v), and (ix) point persuasively to the conclusion that a further reduction in the Gilbert Firm's fee award is necessary as a result of the excessive amount of post-trial hours claimed by the Gilbert Firm. Of the 10,955 hours claimed, only 4,897.6 relate to work completed up to the end of trial.[19] In other words, the Gilbert Firm's time entries reflect approximately as many hours of post-trial work as the hours the Gilbert Firm claimed from the date of retention through trial. No doubt the Gilbert Firm is entitled to some post-trial hours and fees for its preparation of the briefs to the Fourth Circuit, but the approximately 5,000 post-trial hours are excessive given that the Fourth Circuit oral argument in December 2011 was presented by WMC, not the Gilbert Firm, and that all post-trial enforcement actions on behalf of plaintiffs were filed by WMC, not the Gilbert Firm. In this regard, it is difficult to see how the collection efforts by the Gilbert Firm were either substantial or effective in the result ultimately secured *by WMC*, not the Gilbert Firm.[20] In this regard, it appears that the

---

[19] It is worth reiterating that although the Gilbert Firm on remand seeks to exclude 4,192 hours of the original 10,955 hours claimed, it is impossible to determine the specific time entries that the Gilbert Firm seeks to exclude, and therefore the original 10,955 hours claimed must be used as a starting point in the lodestar analysis. It is worth noting, however, that the Gilbert Firm necessarily seeks more hours than the 4,897.6 hours relating to work completed up to the end of trial, as the Gilbert Firm now contends that it is entitled to a total of 6,763 hours, which is 1,865.4 hours greater than the amount of hours claimed for work through trial.

[20] The fact that Linglong never offered more than $1 million to settle this case while the Gilbert Firm represented plaintiffs demonstrates the ineffectiveness and inefficiency of the Gilbert Firm's collection efforts and the true value of the result secured by the Gilbert Firm. Indeed, it

only enforcement-related motion the Gilbert Firm filed was a motion to register judgment in other jurisdictions, and this motion was denied without prejudice because it was inadequately supported.[21] Thus, the Gilbert Firm's request for post-trial hours is plainly unwarranted on a *quantum meruit* basis, given that the Gilbert Firm appears to be seeking fees for roughly the same number of hours for post-trial work as the hours the Gilbert Firm spent from the beginning of the case through the conclusion of the trial. To account for this defect in the fee claim, the Gilbert Firm's 10,955 claimed hours are reduced an additional 2%.

In sum, as a result of the application of the *County of Campbell* factors, the 10,955 hours claimed by the Gilbert Firm must be reduced by 65%, which yields a total of 3,834.25 hours.[22] Multiplying this amount by the adjusted hourly rates already calculated yields an adjusted figure of $1,237,720 that the Gilbert Firm can recover in fees under *quantum meruit* principles.

### III.

With respect to costs, the Fourth Circuit concluded that *Outsidewall I* erroneously used a reasonableness standard to reduce the amount of costs sought by the Gilbert Firm from $1,812,149.20 to $720,621.67. Specifically, the Fourth Circuit determined that *Outsidewall I*

---

was not until plaintiffs terminated the Gilbert Firm and hired WMC to take control of collections that 14 different proceedings across the country were filed, over $500,000 was collected from Linglong's distributors, and Linglong ultimately agreed to pay an additional $15.5 million.

[21] *See* Matteis Reply Decl. ¶ 16; *In re Outsidewall Tire Litigation*, 1:09cv1217 (E.D. Va. Nov. 16, 2010) (Order) (Doc. 376).

[22] As already noted, on remand the Gilbert Firm, in an effort to reopen the factual record, claims only 6,763 hours of the 10,955 hours included in the original fee claim. Yet, as also previously noted, the Gilbert Firm identifies only general categories of withdrawn time entries and does not specify the particular time entries it now seeks to exclude. Thus, it is impractical—if not impossible—to determine which of the 10,995 hours the Gilbert Firm now seeks to exclude. Accordingly, it is appropriate to use the 10,995 hours in the original fee claim as the starting point for the analysis here. Nonetheless, it is worth noting that the 3,834.25 hours awarded after application of the *County of Campbell* factors is approximately a 57% reduction in the 6,763 hours the Gilbert Firm now requests on remand.

"assumed, after correctly determining that the contingency fee provision was unenforceable ... , that the entire [E]ngagement [L]etter," including the costs provision, "was unenforceable," when in fact the costs provision is enforceable, and as a result, *Outsidewall I* erroneously "employed a 'reasonableness' inquiry to award costs" instead of looking to the Engagement Letter to determine the costs to which the Gilbert Firm is contractually entitled. *In re Outsidewall Tire Litigation*, 2016 WL 106276, at \*4. Accordingly, the Fourth Circuit vacated the award of costs and remanded "with instructions to recalculate the cost award after considering the 'costs and expenses' and 'termination' provisions of the [Engagement Letter]." *Id.* at \*5.

The Engagement Letter provides that "[i]n the event that Alpha elects to terminate our representation, ... Alpha will reimburse the Firm for all out-of-pocket expenses and disbursements incurred by the Firm ... ." Engagement Letter. Specifically, "[s]uch costs and expenses may include photocopying charges, courier and overnight delivery charges, travel expenses (including mileage, parking, airfare, lodging, meals, translation services, security, and ground transportation), costs incurred in computerized research, litigation support services, filing fees, witness fees, and the costs of any consultants, experts, investigators, court reporters, or other third parties who [the Gilbert Firm] deem[s] necessary." *Id.*

As reflected in *Outsidewall I*, the costs the Gilbert Firm seeks here generally fall into three categories: (i) "overhead expenses, such as internal copying, printing, and scanning of documents, telephone charges, online legal research charges, overtime meals, and HVAC"; (ii) expert fees and costs relating to technical expert Raymond Evans"; and (iii) "expert fees and costs relating to damages expert Phil Nelson." *Outsidewall I*, 52 F. Supp.3d at 793. Although plaintiffs do not contest the fees and costs relating to technical expert Raymond Evans, plaintiffs do contest the costs reflected in categories (i) and (iii) above.

In particular, plaintiffs contend that the reasonableness analysis employed in *Outsidewall I* is consistent with the costs provision of the Engagement Letter, and therefore the Gilbert Firm should be awarded only $720,621.67 in costs. In this regard, plaintiffs contend that despite the costs provision, a district court has inherent authority to ensure that lawyers do not take advantage of their clients. In other words, the costs provision is not an unfettered license for the Gilbert Firm to charge plaintiffs for anything and everything without providing support, documentation, and justification for such charges. Rather, plaintiffs contend that despite the Engagement Letter, the Gilbert Firm owes plaintiffs a fiduciary duty to justify its costs and not to charge plaintiffs for excessive and arbitrary expenses and disbursements.

In this respect, the Supreme Court of Virginia has made clear that "[c]ontracts for legal services are not the same as other contracts" because "[s]uch an agreement is permeated with the paramount relationship of attorney client which necessarily affects the rights and duties of each." *Heinzman*, 234 S.E.2d at 282, 285 (Va. 1977). Indeed, "[a]n attorney occupies toward his client a high position of trust and confidence, and in his relations with his client it is his duty to exercise and maintain the utmost good faith, integrity, fairness and fidelity." *J.C. Byars v. C.J. Stone & S.T. Gilmer Adm'rs.*, 42 S.E. 2d 847, 852 (Va. 1947). On this basis, plaintiffs contend that the reduction in costs reflected in *Outsidewall I* was justified because it was premised not simply on finding that the excluded expenses were unreasonable, but also on a finding that the Gilbert Firm's "kitchen sink" approach led to charges that were "egregious," "inexplicable," "excessive," "inadequately supported," "non-compensable," "unjustifiably high," and "excessively high." *Outsidewall I*, 52 F. Supp.3d at 793-95.

With respect to the first category of costs—overhead expenses—plaintiffs are correct that the reduction reflected in *Outsidewall I* is consistent with Engagement Letter's costs provision.

Specifically, *Outsidewall I* reduced the $372,138.20 claimed in overhead expenses by $79,580.53 because the Gilbert Firm (i) provided no basis for charges such as "overtime meals, telephone charges, or online legal research ... where, as here, the Gilbert law firm pays a flat rate for all online legal research charges," and (ii) sought to recover costs beyond the scope of those covered by the Engagement Letter's costs provision, namely an "inexplicable claim to recoup $82 for a gift the firm sent to Fishman while Fishman was in the hospital recovering from surgery[,] ... an $845 bill for a dinner to which Fishman was invited by the firm chair," and "alcohol purchased for a [Gilbert] firm party." *Outsidewall I*, 52 F. Supp.3d at 793, 794. Although the costs provision in the Engagement Letter contemplates certain actual out-of-pocket expenses, such as travel, it does not include reimbursement for internal overhead charges. Moreover, although the costs provision refers to meals purchased *during travel*, there is no mention of overtime meals purchased at the office. Nor are costs associated with telephone calls enumerated in the costs provision. Computer research is listed in the costs provision, but as explained in the *Outsidewall I*, "it is difficult to see how a flat rate charge paid by a firm can be allocated among the firm's many clients, and nothing in this record provides any basis for allocating a portion of the Gilbert Firm's flat rate to work done on behalf of plaintiffs." *Id.* Finally, no fair reading of the Engagement Letter's costs provision includes gifts for clients and alcohol for firm parties. Thus, the $79,580.53 claimed for costs associated with overtime meals, telephone charges, online legal research, and other costs beyond the scope of the costs provision must be disallowed as inadequately supported, non-compensable, or excessive.

With respect to the third category of costs sought by the Gilbert Firm—expert fees and costs relating to damages expert Phil Nelson—*Outsidewall I* reduced the Gilbert Firm's claim of $1,394,351 in expert fees to $382,404 because the Gilbert Firm failed "to demonstrate the

reasonableness of its proffered expert rate and fee." *Id.* at 794. As the Fourth Circuit made clear, however, reasonableness analysis is inappropriate to determine whether the Gilbert Firm is entitled to the costs relating to damages expert Phil Nelson because the costs provision of the Engagement Letter expressly provides that plaintiffs must reimburse the Gilbert Firm for *all* costs relating to expert and witness fees. Accordingly, the Gilbert Firm is entitled to the full $1,394,351 in costs associated with damages expert Phil Nelson, even though Nelson's rates "are higher by a factor of two than the [reasonable] rates charged by comparable damages experts and support staff." *Id.* Had the Engagement Letter limited costs for expert services to reasonable costs, a reduction would be appropriate here.[23]

Thus, based on the foregoing analysis, the Gilbert Firm is entitled to the following expenses: (i) $292,557.67 for reimbursable costs other than experts, (ii) $45,660 in expert fees for the services of technical expert Raymond Evans, and (iii) $1,394,351 in expert fees for the services of damages expert Phil Nelson. Thus, the Gilbert Firm is entitled to a total costs award of $1,732,568.67.[24]

---

[23] In opposition to the conclusion reached here, plaintiffs contend that even though reasonableness review of Nelson's costs is inappropriate on remand, these costs should be reduced because $463,377.58 of Nelson's costs were not included in the trademark fee petition, indicating that the Gilbert Firm has not used the same billing judgment that Matteis and Copley used in connection with the trademark fee petition. Yet, as the Gilbert Firm correctly notes, Nelson's costs were reduced by $463,377.58 in connection with the trademark fee petition not because these costs were excessive or unnecessary in the litigation as a whole, but rather because the costs were not attributable only to claims covered by the Lanham Act, and therefore were not properly recoverable in a Lanham Act fee-shifting request. Accordingly, the reduction of $463,377.58 at the time of the trademark fee petition has no bearing here.

[24] As already noted, on remand, the Gilbert Firm reduced slightly the amount in costs it seeks from $1,812,149.20 to $1,740,312.90. The analysis here is based on the original amount sought by the Gilbert Firm, but it is worth noting that the difference between $1,812,149.20 and $1,740,312.90 approximates the reduction in overhead charges applied here.

## IV.

Based on careful consideration of the Gilbert Firm's fee claim and supporting materials, the parties' briefs, oral argument, the Fourth Circuit's Memorandum Opinion, the parties' supplemental briefs on remand, and the court's years of experience with these types of cases, a fee award measured by *quantum meruit* of $1,237,720 is appropriate, and costs in the amount of $1,732,568.67 is appropriate, for a total of $2,970,288.67 as the value of the Gilbert Firm's lien.

An appropriate Order will issue.


Alexandria, Virginia
April 7, 2016


_____
T. S. Ellis, III
United States District Judge